UNITED STATES of America, Appellee,

v.

Donald M. TINSLEY, a/k/a "Wiseman,"
SS# 229–72–9617, Appellant.

No. 85–5124.

United States Court of Appeals,
Fourth Circuit.

Argued July 18, 1986.

Decided Sept. 16, 1986.

John H. Kennett, Jr., Roanoke, Va., for appellant.

Thomas J. Bondurant, Jr., Asst. U.S. Atty. (John P. Alderman, U.S. Atty., Roanoke, Va., on brief), for appellee.

Before WIDENER, PHILLIPS and CHAPMAN, Circuit Judges.

PER CURIAM:

Donald M. Tinsley was one of seven members of the Pagan Motorcycle Club indicted for racketeering, conducting a continuing criminal enterprise, and various drug and firearms charges. Tinsley was specifically charged with racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (1982), racketeering in violation of 18 U.S.C. § 1962(c) (1982), and facilitating the distribution of methamphetamine by the use of a communications facility in violation of 21 U.S.C. § 843(b) (1982). Prior to trial, all of Tinsley's codefendants entered pleas of guilty to one or more of the counts in the indictment. Following a jury trial, Tinsley was convicted of racketeering conspiracy and racketeering, but he was acquitted under Count 9 of the indictment facilitating the distribution of methamphetamine by the use of a communications facility. He appeals, claiming (1) that the delay between his first appearance before a judicial officer and the date of his trial was more than seventy days and violated the Speedy Trial Act, specifically 18 U.S.C. § 3161(c) (1982); (2) that the evidence was insufficient to establish racketeering activity; and (3) that his acquittal under Count 9 eliminated the necessary predicate act to convict him of the racketeering offenses. Finding no merit in these exceptions, we affirm.

I

Pagan Motorcycle Club, sometimes referred to as the Pagan Nation, is an association with members located along the eastern coast of the United States. There is a national group of officers and a ruling body known as the Mother Club. All policies, rules, and laws governing the Pagan Nation are created by the Mother Club. Each Mother Club member has complete authority over a designated geographical area. These areas are subdivided into smaller units called chapters, and the presidents of these chapters are appointed by the Mother Club member having control of that area. Richard Duncan was national vice president and a Mother Club member. His geographical area was the State of Virginia, and he appointed appellant Tinsley as chapter president in Roanoke. The Pagan Motorcycle Club owned a small farm in Pennsylvania and organized social events, including parties and motorcycle trips.

In the summer of 1979, the Mother Club met in New Jersey and decided to set up a methamphetamine distribution channel through the chain of command of the Pagan Nation. The Mother Club designated certain manufacturers who would supply methamphetamine exclusively to Mother Club members. These members had absolute control over distribution of the drug in their particular geographic area. Pagan members could only purchase the drug through the chain of command, and no one could sell methamphetamine without the permission of the Mother Club member having control of the area. Richard Duncan began acquiring methamphetamine for resale through the Pagan distribution channels in 1979. In 1980, Duncan gave permission to Kenneth Weaver to sell the drug to a non-Pagan customer in Virginia but required Weaver to sell methamphetamine to Duncan at a wholesale price. After appellant Tinsley became president of the Roanoke chapter, he began to acquire methamphetamine from Duncan for resale. Tinsley distributed the drug to approximately ten Pagans in the Roanoke chapter. In 1981 and 1982, Tinsley made trips to New Jersey on Duncan's behalf to pick up methamphetamine from Weaver and transport it to Virginia. In the summer of 1981, Tinsley asked Duncan to stop Weaver from selling the drug to his non-Pagan distributor in the Roanoke area, and in August 1981, Duncan ordered Weaver to terminate his business relationship with the non-Pagan distributor. Weaver agreed. Later, Tinsley and Weaver sought to deal the drug directly without having to go through Duncan. Duncan gave his consent so long as Tinsley paid him $200 per ounce of methamphetamine that Tinsley received from Weaver. In one transaction, Tinsley sent a Western Union money order, dated April 28, 1982, to Weaver in payment for three ounces of methamphetamine, and this is the transaction covered by Count 9 of the indictment, upon which Tinsley was acquitted.

Tinsley was arrested on August 16, 1984, brought before a judicial officer the following day, and released on bond. On August 31, 1984, he entered a plea of not guilty. He was not brought to trial until January 14, 1985. Various motions were made by Tinsley and his codefendants. Shortly after indictment, Tinsley made a motion for severance from the other defendants. This motion was filed on September 27, 1984, and denied the following day. Tinsley then filed a motion to be tried within the time limit set by the Speedy Trial Act, and this motion was denied. On September 10, Tinsley made a motion for a bill of particulars, and on October 16, he made motions for discovery and inspection, for request of notice of government's intention to use evidence, and for exculpatory evidence. Tinsley filed another motion for discovery on December 14 and motions to dismiss and for severance on December 28. On the first day of trial, January 14, 1985, he moved for a continuance.

Some of the pretrial motions were heard by Chief Judge James C. Turk and others were heard Judge Jackson L. Kiser, who also tried the case. On November 2, 1984, the two judges entered a joint order granting a continuance and finding that the end

of justice served by granting the continuance outweighed the best interest of the public and the defendants in a speedy trial because of the complex nature of the case, the number of defendants, and the number of counts charged in the indictment.

## II

■ There is no substance to the appellant's claim of violation of the Speedy Trial Act. A review of the docket sheet contained in the appendix reflects the numerous motions made prior to trial and the time that these motions were under consideration. There has been no showing that these motions were not promptly disposed of and, therefore, these periods are excludable under 18 U.S.C. § 3161(h)(1)(F) (1982). When these periods are excluded, it is obvious that the time constraints of the Speedy Trial Act have not been violated.

In addition to the excludable time, the district court entered an order pursuant to 18 U.S.C. § 3161(h)(8)(A) (1982) setting forth its reasons for continuing the case and its reason for finding that the ends of justice served by the granting of such continuance outweighed the best interest of the public and the defendant in a speedy trial. The reasons stated by the court for granting the continuance are supported by the record.

## III

■ Tinsley claims that there was no evidence to show that the substance described by the government witnesses was methamphetamine, and that even if there were such evidence, it was insufficient to show racketeering activity as he interprets the definition of "racketeering activity" contained in 18 U.S.C. § 1961(1) (Supp.II 1984). This section gives one definition of racketeering activity as "dealing in narcotics or other dangerous drugs." Tinsley claims that methamphetamine is not a narcotic, nor is it an "other dangerous drug" because this term is not defined in § 1961 and is not used elsewhere in the United States Code. In *United States v. Scott*, 725 F.2d 43 (4th Cir.1984), we held that the

character of an illicit drug may be established circumstantially by lay witnesses, and if the circumstantial evidence is adequate, the question of whether the substance is within the statutory prohibition is for the jury. The evidence in the present case was sufficient to support the finding that the defendant was dealing in methamphetamine. Many of the government witnesses were experienced not only in buying and selling methamphetamine, but in personally using it. They were familiar with its appearance and the economics of supplying, buying, and selling it. This testimony was sufficient to identify the substance without the necessity of expert testimony from medically or scientifically trained persons and without evidence of chemical analysis.

Methamphetamine is identified as a schedule II controlled substance under 21 U.S.C. § 812 (1982 & Supp.II 1984).

## IV

■ Tinsley argues that his convictions under Counts 1 and 2 are invalid as a matter of law because of his acquittal on Count 9. Count 1 charged conspiracy to violate the racketeering statute in violation of 18 U.S.C. § 1962(d). Count 2 charged racketeering in violation of 18 U.S.C. § 1962(c) in associating with an enterprise (Pagan Motorcycle Club) and in participating in the conduct of the enterprise's affairs through a pattern of racketeering activity by committing at least two predicate acts designated in 18 U.S.C. § 1961(1). The indictment contained separate allegations of predicate acts by the various defendants, and as to Tinsley there were three predicate acts charged: conspiracy to distribute methamphetamine, interstate travel in aid of racketeering, and using a communication facility to facilitate the distribution of methamphetamine. This last predicate offense was also the same offense charged in Count 9 of the indictment, the count upon which Tinsley was acquitted. He argues that since a conspiracy to distribute a controlled substance may not be used as a predicate act in a RICO charge and since

he was acquitted on the communication charge, there remains only one valid predicate act and, therefore, Counts 1 and 2 should be dismissed.

The problem of inconsistent jury verdicts in criminal cases has recently been answered by the Supreme Court in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), which reaffirmed its decision in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). In *Dunn* Justice Holmes stated:

> The most that can be said in such cases is that the verdict shows that either in the acquittal or in the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

284 U.S. at 393, 52 S.Ct. at 190.

Dunn was charged with three violations of federal liquor laws. He was convicted on the first count, which alleged that he maintained a common nuisance by keeping intoxicating liquor for sale at a specified place, but he was acquitted on the second and third counts, which charged unlawful possession and unlawful sale of the liquor. The court rejected the claim that the inconsistency in the verdicts should invalidate the conviction on the first count.

Powell was charged with conspiring with her son and husband to possess cocaine with intent to distribute, with possession of cocaine with intent to distribute, several counts of using a telephone, committing and facilitating the conspiracy to possess with intent to distribute, and possession with intent to distribute cocaine. The telephone counts were also overt acts listed in support of the conspiracy count. The jury convicted Powell of three of the telephone counts but acquitted her on the conspiracy count and also on the possession with intent to distribute count. The Court of Appeals for the Ninth Circuit found an exception to *Dunn*, stating that the acquittal on the predicate felony necessarily indicated that there was insufficient evidence to support the telephone facilitation convictions. The Supreme Court refused to go along with any erosion of the *Dunn* rule.

Justice Rehnquist, speaking for the Court in *Powell*, addressed the problem of acquittal of predicate felonies:

> Respondent contends, nevertheless, that an exception to the *Dunn* rule should be made where the jury acquits a defendant of a predicate felony, but convicts on the compound felony. Such an "exception" falls almost of its own weight. First, the acceptability of this exception is belied by the facts of *Dunn* itself. In *Dunn*, the defendant was acquitted of unlawful possession, and unlawful sale, of liquor, but was convicted of maintaining a nuisance by keeping unlawful liquor for sale at a specified place. The same evidence was adduced for all three counts, and Justice Butler's dissent persuasively points out that the jury could not have convicted on the nuisance count without finding that the defendant possessed, or sold, intoxicating liquor. *Dunn*, 284 U.S. at 398, 52 S.Ct. at 192. Respondent's exception therefore threatens to swallow the rule.
>
> Second, respondent's argument that an acquittal on the predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The government could just as easily-and erroneously-argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. The problem is that the same jury reached inconsistent results; once that is established principles of collateral

estoppel-which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict-are no longer useful.

This problem is not altered when the trial judge instructs the jury that it must find the defendant guilty of the predicate offense to convict on the compound offense. Although such an instruction might indicate that the counts are no longer independent, if inconsistent verdicts are nevertheless reached those verdicts still are likely to be the result of mistake, or lenity, and therefore are subject to the *Dunn* rationale. Given this impasse, the factors detailed above-the government's inability to invoke review, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity-suggests the best course to take is simply to insulate jury verdicts from review on this ground.

469 U.S. at 67–69, 105 S.Ct. at 478–479.

The jury's acquittal of Tinsley on the telephone facilitation charge in Count 9 does not invalidate the convictions on Counts 1 and 2, in which the telephone facilitation acted as a predicate offense.

AFFIRMED.