KANNE, Circuit Judge.
 

 Mark A. Center is an attorney in Indianapolis, Indiana. Mr. Center’s practice focused largely on bankruptcy and commercial law. The indictment in this cause arose from Mr. Center’s activities in a Chapter 11 bankruptcy proceeding. He was charged in a four count indictment. Count one charged him with fraudulently concealing an asset of a debtor from creditors (18 U.S.C. §§ 152 and 2). Count two and count three charged Mr. Center with fraudulently falsifying and making false entries in a document affecting or relating to the affairs of a debtor (18 U.S.C. §§ 152 and 2). In count four he was charged with executing and attempting to execute a scheme to defraud a federally insured financial institution (18 U.S.C. §§ 1344 and 2). The case was tried to the court and District Judge S. Hugh Dillin dismissed count one, found Center guilty of counts two and three and acquitted him on count four. Judge Dillin gave Mr. Center concurrent sentences of a year and a day on each
 
 *570
 
 of counts two and three. All but four months were then suspended with the balance to be served on probation.
 

 Mr. Center now appeals his conviction. We affirm the district court.
 

 I.
 
 Facts
 

 Foxcliff South, Inc. was developing a real estate project called “Foxcliff South” in Morgan County, Indiana. John Fewell owned 75% of the stock in Foxcliff South, Inc. (“Foxcliff”). Summit City Utilities, Inc. (“Summit”) supplied water and sewer services to the Foxcliff South development. John Fewell owned all of the stock in Summit.
 

 Foxcliff ran into financial and legal difficulties and consequently filed a petition under Chapter 11 of the bankruptcy code on March 9, 1984.
 
 [1]
 
 Mark Center was the attorney for Foxcliff in that petition.
 

 Merchants National Bank and Trust Company of Indianapolis (“Merchants”) is insured by the Federal Deposit and Insurance Corporation. Merchants had purchased a large number of land sale contracts from the sale of lots in the Foxcliff South development. Merchants also made a loan to Foxcliff for $10,000.00 that was secured by a bulldozer. When Foxcliff filed its bankruptcy petition, Merchants sought to take over and complete the Fox-cliff South development in order to protect its other interests which exceeded the secured $10,000.00 debt. As purchaser of these land sales contracts, Merchants faced potential liability from lawsuits by lot purchasers for failure to complete the Foxcliff South development. This potential liability was estimated to be as high as $5,500,-000.00.
 

 Summit owed Foxcliff approximately $130,000.00.
 
 [2]
 
 Foxcliff owed John Fewell approximately $226,000.00. Summit had assets sufficient to satisfy its debt to Fox-cliff. Summit was not a party in bankruptcy.
 

 Section 521(1) of the bankruptcy code requires a debtor to “file a ... schedule of assets and liabilities.” Mark Center did not list the debt owed by Summit on the schedule of assets he prepared for Foxcliff. However, at that same time, Center did file a schedule of liabilities which included the debt that Foxcliff owed to Fewell.
 

 Apparently, at the time the petition was filed, Mr. Center was not aware of the debt owed by Summit to Foxcliff. However, sometime around June 10, 1985, he did learn of this omitted asset, but took no action to apprise the bankruptcy court of this newly discovered debt owed to Fox-cliff. Mr. Center then saw to it that documents were executed and book entries made which caused John Fewell to assign the debt owed by Foxcliff to Summit as paid in capital. The hoped for result was a set-off. Because of the assignment, Summit had become a creditor of Foxcliff and Summit could avoid paying Foxcliff since Foxcliff now owed Summit an amount greater than Summit owed Foxcliff. The relevant documents were executed and then backdated to December 31, 1984.
 
 [3]
 
 Liabilities on Summit’s books as of December 31,1984, were to be reported to the Indiana Public Service Commission as part of Summit’s annual filing. It appears that Mr. Center feared that this filing would alert Merchants to this asset’s existence.
 

 II.
 
 Analysis
 

 On appeal, Mr. Center offers three arguments for reversing his conviction. First, he claims that the entries he caused to be made in the Foxcliff and Summit books were not false or fraudulent since these
 
 *571
 
 entries record a transaction that did actually occur. Second, when the records were changed, Foxcliff was not a debtor in bankruptcy within the meaning of 18 U.S.C. § 152 and thus his actions did not affect or relate to the affairs of a debtor. Third, Mr. Center argues that the evidence used to support his conviction on count two was insufficient. Specifically, he claims that the testimony of Betty Lasiter, an accountant, was conclusory and insufficient to support a criminal conviction on the charge that he directed the alteration of the Fox-cliff books. We reject all of the appellant’s arguments.
 

 A.
 

 Mr. Center claims that the entries he directed to be made in the Foxcliff and Summit books were not false or fraudulent since the transaction (the debt assignment) did actually occur. He argues that an accounting entry is not automatically false or fraudulent when it is merely recording an assignment which was false or fraudulent. In other words, although the underlying transaction was false or fraudulent (at oral argument his counsel conceded that there had been a concealment) an entry that correctly reflects such a transaction is not false or fraudulent.
 

 Mr. Center cites
 
 Coffin v. United States,
 
 156 U.S. 432, 462-63, 15 S.Ct. 394, 406, 39 L.Ed. 481 (1895) and
 
 United States v. Erickson,
 
 601 F.2d 296, 302 (7th Cir.),
 
 cert. denied,
 
 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 406 (1979), as support for this proposition. However, both of these cases dealt with violations of 18 U.S.C. § 1005 which prohibits false or fraudulent entries in a bank’s records. The statute involved here, 18 U.S.C. § 152, is broader in scope than § 1005. The purpose of § 152 is to proscribe the concealment of a bankrupt’s assets (with false book entries being one of the possible vehicles available to affect a concealment); while § 1005 deals with the act of making false entries in a bank’s records.
 

 Mr. Center’s actions were done to conceal the debt owed by Summit to Fox-cliff. Clearly, Mr. Center violated § 152. Appellant’s arguments to the contrary are ingenious but merely semantic gymnastics. An entry that accurately logs a fraudulent transaction is a fraudulent entry where the party making the entry is aware that he is recording a fraudulent transaction. There is no magic process of purification when the party directing the entry is the same party directing the concealment.
 

 Further, Mr. Center’s argument does not square with the facts of this case. First, the entry was fraudulent since it fraudulently misrepresented the transaction’s date. Second, it was not legally possible for the transaction to have occurred on December 31, 1984 — 11 U.S.C. § 553(a)(2) prohibits transferring claims (to create a set-off) after a case has commenced. Therefore, the entry was fraudulent since Center knew the transaction was legally impossible and that the entry reflected a legally invalid transaction.
 

 B.
 

 Mr. Center next argues that Fox-cliff was not a debtor within the meaning of 18 U.S.C. § 152 when he executed the documents and book entries in June of 1985. To support this argument, he relies on the bankruptcy court’s order confirming the reorganization plan dated April 9, 1984. This order, Mr. Center urges, placed New-corp, Inc.
 
 [4]
 
 in the position of the debtor in bankruptcy and removed Foxcliff from the bankruptcy court’s protection.
 

 This argument misses the point. Without addressing the question of whether Foxcliff was subject to the bankruptcy court’s jurisdiction, it is clear that the debt owed by Summit to Foxcliff was still an asset of the estate of the debtor in bankruptcy.
 
 [5]
 
 Whether that debtor in bankrupt
 
 *572
 
 cy was Foxcliff or Newcorp, Inc. is irrelevant. The fact is that Mr. Center’s actions had the effect of concealing the asset of a debtor in bankruptcy. This alone is sufficient to violate § 152. The identity of the debtor in bankruptcy is not important here; it is the appellant’s conduct toward the asset that is important.
 

 C.
 

 In his third and final argument, Mr. Center attacks his conviction on count two.
 
 [6]
 
 He argues that the facts do not support the conclusion that he made, caused to be made, procured the making of, or aided, abetted, counseled, commanded or induced the entry in the Foxcliff general ledger. Specifically, he attacks the testimony of Betty Lasiter, a government witness and the accountant for Summit and Foxcliff in 1985.
 
 [7]
 
 Center argues that Ms. Lasiter’s testimony was conclusory and did not constitute evidence adequate to support a criminal conviction.
 

 After reviewing the transcript of Ms. Lasiter’s testimony, it is clear that this argument should be rejected. Ms. Lasiter testified that Mr. Center definitely caused the entry to be made in Foxcliff’s books. His initial request was that Ms. Lasiter transfer the debt to “paid in capital” on Summit’s books. However, Ms. Lasiter testified that Mr. Center indicated that an entry in the books of Foxcliff would be the result. Specifically Ms. Lasiter’s testimony on cross examination was as follows:
 

 Q. Is it your testimony that he specifically directed you to make entries in the books and records of Foxcliff South as well as Summit City?
 

 A. I asked him to explain the transaction to me. And the explanation was that it would also affect the books and records of Foxcliff South.
 

 (Transcript p. 60).
 

 III.
 
 Conclusion
 

 Neither Mr. Center’s technical arguments that his actions did not come within the meaning of the statute in counts two and three, nor his argument that there were insufficient facts to support a conviction on count two have been persuasive. The district court’s judgment of conviction on counts two and three is Affirmed.
 

 [1]
 

 . Development and lot sales stopped in the Fox-cliff South development when the Department of Housing and Urban Development determined that there had been violations of the Interstate Land and Sales Registration Act. 15 U.S.C. § 1701,
 
 et seq.
 

 [2]
 

 . The indictment specifies a debt in the amount of $128,657.76, however, the records of Summit City Utilities, Inc. show a debt to Foxcliff South, Inc. of $130,627.42 as of December 31, 1984. The specific amount is not relevant to this appeal.
 

 [3]
 

 .The bankruptcy petition was filed on March 9, 1984, and Foxcliff South, Inc. was a debtor in bankruptcy on December 31, 1984. Also, Center argues that the documents were not backdated to December 31, 1984, but rather were simply made to be effective as of December 31, 1984.
 

 [4]
 

 . Newcorp, Inc. ("Newcorp") was a wholly-owned subsidiary of Merchants. The reorganization plan provided that assets of the bankrupt would be vested in Newcorp.
 

 [5]
 

 . 11 U.S.C. § 554(d) reads: “Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.”
 

 [6]
 

 . Count two charges him with causing an entry to be made in the general ledger of Foxcliff South, Inc. Center does not attack the verdict on count three which charged him with causing an entry in Financial Section Annual Report of Summit City Utilities, Inc. for the year ending December 31, 1984.
 

 [7]
 

 . Ms. Lasiter is also John Fewell's niece.