**UNITED STATES of America**

v.

**Frank E. BUTLER, III and Owen R. Thornton.**

**Crim. No. 88–53–N.**

United States District Court,
E.D. Virginia,
Norfolk Div.

Jan. 3, 1989.

See also 704 F.Supp. 1351.

Stanley Sacks, Andrew Sacks, Norfolk, Va., for Butler.

J. Brian Donnelly, Virginia Beach, Va., for Thornton.

Joseph A. Fisher, III, James A. Metcalfe, Justin W. Williams, Mark A. Adler, Rachel Ballow, U.S. Attys. Office, Norfolk, Va., for U.S.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on defendants' various post-trial motions. On November 28, 1988, after an eight-week jury trial, both defendants were found guilty of numerous counts, including charges of wire fraud, bank fraud, racketeering and bankruptcy fraud. The defendant Frank E. Butler, III has filed, alternatively, a Motion for Judgment of Acquittal, a Motion for a New Trial, and a Motion in Arrest of Judgment, and has renewed his pretrial Motion to Dismiss various counts of the indictment. The defendant Owen R. Thornton has renewed his trial Motion for Judgment of Acquittal. All of the Motions were timely filed; each defendant's Motions will be addressed in turn.

### Background

This case arises from the defendants' involvement in the affairs of Landbank Equity Corp. ("Landbank"), an issuer and seller of mortgage-backed loans, which went bankrupt on September 17, 1985. Defendants Butler, an attorney, and Thornton, an accountant, were indicted along with three Landbank officers. William R. Runnells, Jr. and Marika Lody Runnells, the sole stockholders of Landbank and its alleged "masterminds," fled the jurisdiction. Ross E. Schumann, Jr. committed suicide after the jury was impanelled, but before the presentation of evidence.

The 138–page indictment alleged, in brief, that the five defendants and various others used Landbank and its related companies in a massive scheme to defraud investor banks, who purchased loans made to consumers by Landbank. Landbank made loans to consumers, generally secured by second mortgages. These loans were sold, on the "secondary market," to savings and loans and other financial institutions, as well as to the Federal National Mortgage Association ("Fannie Mae"). The investors purchased the loans by means of wire transfers to Landbank's account in a bank which provided a "warehousing" line of credit to finance the loans.

The government alleged that Landbank misrepresented the quality of its loans by falsifying credit applications, overstating the credit-worthiness of borrowers and the value of the mortgaged properties, and misrepresenting the insured status of the loans. Landbank, which serviced the loans on behalf of investors, also concealed delinquencies in loan payments by "covering" them with funds from other investors and misrepresented to potential investors its historical delinquency rates. Landbank submitted allegedly false financial statements, prepared by the defendant Thornton, to its investors, to Fannie Mae and to others.

The indictment further alleged that Landbank originated and sold numerous sham "insider" loans. These loans, in the form of first mortgages on condominium units developed by Landbank companies, were placed in the names of Landbank employees or family members of Landbank principals. These loan documents were typically falsified to show nonexistent down payments, inflated income levels and false credit and debt information. Landbank, rather than the nominal borrowers, made the monthly payments on the loans, which were sold to investors as bona fide loans made to the named individuals. Once the loans were sold to investors, the insiders would deed the properties back to Landbank or its affiliates, which would hold the properties until they were sold to third parties. The loan closings, many of which involved falsely notarized documents, were conducted at the defendant Butler's law firm, allegedly at his direction.

Finally, the indictment charged that the defendant Butler and others transferred and concealed various pieces of real property first in contemplation of bankruptcy and later from the appointed trustee. The defendant Thornton was charged with withholding from the trustee in bankruptcy various books and records relating to the financial affairs of Landbank and its affiliates.

These substantive charges also formed the basis of counts alleging a violation of the Racketeer Influenced and Corrupt Organizations statute ("RICO") and RICO conspiracy.

One hundred and twenty-eight witnesses testified in the eight-week trial, and ten filing cabinets of exhibits were admitted into evidence. After nearly seven days of deliberation, the jury returned a verdict finding the defendant Butler guilty of thirty-five counts of wire fraud, nine counts of bankruptcy fraud, three counts of bank fraud, and RICO substantive and conspiracy counts. The jury was unable to reach a verdict on one wire fraud count. The defendant Thornton was found guilty on twenty-one counts of wire fraud, one count of bank fraud, and the RICO substantive and conspiracy counts. The jury found him not guilty of one count of wire fraud and was unable to reach a verdict on nine counts of wire fraud and on the bankruptcy fraud count.

### Motions of Defendant Thornton

Thornton first "renews [his] Motion for a Directed Verdict on the grounds and for the reasons stated" at the conclusion of the government's case-in-chief and at the conclusion of all the evidence. Thornton then moves for judgment of acquittal for additional reasons set forth in his written Motion. Rule 29 of the Federal Rules of Criminal Procedure abolishes the motions for directed verdict in favor of motions for judgment of acquittal, which may be made at the close of the prosecution's case, at the close of all the evidence or at both times. The Court will therefore consider Thornton's two Motions as a single Motion for Judgment of Acquittal.

In deciding a motion for judgment of acquittal after a jury verdict has been returned, the evidence must be viewed in the light most favorable to the government. *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir.1982). The court must determine whether there is substantial evidence that would warrant a jury finding of guilt beyond a reasonable doubt. *Id.*

On November 1, after the close of the government's evidence, Thornton moved for judgment of acquittal. Tr. at 4455. For the present purpose, Thornton's

main arguments at trial were that there was insufficient evidence to support the wire fraud counts and that the insufficiency of these counts left the RICO counts unsupported.

First, he argues, the investors themselves opted to use wire transfers to purchase loans, and neither Thornton nor any other Landbank personnel caused the wire transfers to occur. Because it was a mere matter of chance that investors chose to use wire transfers, the use of wires was not part of the conspiracy to defraud and the wire fraud counts are therefore insufficient. Tr. at 4458–59.

■ The wire fraud statute applies where a defendant "transmits or causes to be transmitted by means of wire" any communication for the purpose of executing a scheme or artifice to defraud. 18 U.S.C. § 1343. Even where a defendant did not himself transmit or cause to be transmitted the communication, liability may attach if the use of interstate wires in the transaction is reasonably foreseeable. *See, e.g., United States v. Muni,* 668 F.2d 87 (2d Cir.1981); *United States v. Calvert,* 523 F.2d 895 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *see also United States v. Locklear,* 829 F.2d 1314, 1318–19 (4th Cir.1987) (involving mail fraud statute).

In this case, the evidence showed that Thornton was aware that Landbank loans were being sold to investors across the country and that wire transfers are commonly used in the banking industry. The jury could properly conclude that the use of wire transfers in Landbank's transactions with investors was reasonably foreseeable. In addition, the evidence showed that Landbank instructed its investors to wire funds for loan purchases to Landbank's Washington bank account. There was sufficient evidence for the jury to find that the wire transfers were caused to be made by other members of the scheme, for whose acts the defendant could be held liable. *See, e.g., United States v. Muni.*

■ Thornton also argues that the government presented insufficient evidence of the predicate acts required to support a RICO count. Thornton argues that the "pattern of racketeering activity" proscribed in 18 U.S.C. §§ 1961 and 1962 requires proof of two separate predicate acts of different types, in this case, of wire fraud and of some other type of criminal activity. Tr. at 4459–60. The statute requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). There is no requirement that these two acts must be of different types, and RICO convictions may be based solely on multiple acts of mail or wire fraud. *See, e.g., Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187 (9th Cir. 1987); *United States v. Garver,* 809 F.2d 1291 (7th Cir.1987); *United States v. Beatty,* 587 F.Supp. 1325 (E.D.N.Y.1984).

■ At trial, Thornton also argued that the charges of substantive RICO and RICO conspiracy are duplicative. The law is clear that a defendant may be charged and convicted of both the substantive RICO offense and conspiracy to commit the same. 18 U.S.C. § 1962(c), (d); *United States v. Schell,* 775 F.2d 559, 568 (4th Cir.1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1498, 89 L.Ed.2d 898 (1986).

■ In his written Motion for Judgment of Acquittal, filed after the jury verdict, Thornton challenges his conviction on 26 of the 36 counts of wire fraud. The jury found him not guilty of one count and was unable to reach a verdict on the remaining nine. Thornton asserts that, because the government has alleged one underlying scheme to commit wire fraud that encompasses all 36 counts, the jury's verdict is inconsistent. He states that he "cannot be both guilty and not guilty of the same offense at the same time."

■ Under the wire fraud statute, 18 U.S.C. § 1343, each separate use of a wire communication constitutes a separate offense, even if the defendant engaged in only a single scheme to defraud. *United States v. Benmuhar,* 658 F.2d 14 (1st Cir. 1981), *cert. denied,* 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982); *United States v. Calvert,* 523 F.2d 895 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Sibley v. Unit-*

*ed States,* 344 F.2d 103 (5th Cir.), *cert. denied,* 382 U.S. 945, 86 S.Ct. 405, 15 L.Ed. 2d 354 (1965). Because each use of the wires is a distinct offense, the jury is permitted, indeed required, to consider each count separately.

Moreover, there is no requirement that jury verdicts be consistent. *United States v. Powell,* 469 U.S. 57, 67–69, 105 S.Ct. 471, 477–79, 83 L.Ed.2d 461 (1984) (upholding inconsistent verdicts of guilty and not guilty on separate counts); *Hamling v. United States,* 418 U.S. 87, 100–01, 94 S.Ct. 2887, 2898–99, 41 L.Ed.2d 590 (1974) (upholding guilty verdicts where jury unable to reach verdict on other counts).

The jury verdict shows that the jurors carefully considered the testimony and documentary evidence as it related to each transaction. There was sufficient evidence for a jury to find beyond a reasonable doubt that Thornton participated in the scheme to defraud and was guilty of any or all of the 36 individual counts. Further inquiry into the thought processes of the jury is improper. *United States v. Powell,* 469 U.S. at 67, 105 S.Ct. at 477–78.

■ Finally, Thornton asserts that his conviction on count 47 of the indictment, the substantive RICO count, should be set aside once his convictions on the predicate acts of wire fraud are set aside. In light of the Court's determination that the jury's verdict as to the wire fraud counts was proper, this claim is without merit, and the verdict as to count 47 will stand. Moreover, a defendant may be found guilty of a RICO violation or RICO conspiracy and acquitted on the predicate act charges. *See United States v. Tinsley,* 800 F.2d 448, 450–52 (4th Cir.1986) (upholding guilty verdict on RICO counts and not guilty verdict on predicate acts).

Thornton's Motion for Judgment of Acquittal is DENIED.

### *Motions of Defendant Butler*

1. Motion in Arrest of Judgment

The defendant Butler has filed a Motion in Arrest of Judgment under Rule 34 of the Federal Rules of Criminal Procedure, asserting that the various counts of the indictment either fail to state a charge and offense against him or are insufficient as a matter of law. The sufficiency of all of the counts in the indictment was fully argued before the Court on August 1, 1988. *See* Hearing on Motion, Aug. 1, 1988, Tr. at 7–103.

■ Butler first argues that counts 1 through 36, the wire fraud counts, do not plead a sufficient factual nexus to connect the defendant to the acts charged and are "otherwise deficient." Butler cites Rule 7(c)(1), apparently arguing that the indictment fails to fully state the essential facts of the offense charged. The Court observed at oral argument that the indictment alleged that Butler helped form the corporation, helped arrange financing for the company, closed fraudulent loan packages and was aware that the corporation intended to sell its mortgages on the secondary market. These allegations are sufficient to connect Butler to the alleged scheme to defraud, at least for purposes of the indictment. In addition, the first 36 counts of the indictment, with their supporting factual allegations, cover 77 pages; these counts more than satisfy the specificity requirements of Rule 7(c)(1).

■ Butler next asserts that counts 37 through 45, the bankruptcy fraud charges, are insufficient for a number of reasons. First, he argues, the subject properties were not subject to the Landbank bankruptcy at the time of the transactions.

A bankruptcy estate includes equitable as well as legal interests. 11 U.S.C. § 541; *United States v. Weinstein,* 834 F.2d 1454, 1461 n. 2 (9th Cir.1987). The indictment charges that each transaction involved "the property of Landbank." The indictment also sets forth the identity and nature of some of the most active of Landbank's numerous subsidiaries and affiliates. The indictment sufficiently states a charge against Butler; whether the property in question actually was "the property of Landbank" is a question of fact properly for the jury. *See United States v. Weinstein,* 834 F.2d 1454; *United States v. Moynagh,* 566 F.2d 799, 803 (1st Cir.1977),

*cert. denied*, 435 U.S. 917, 98 S.Ct. 1475, 55 L.Ed.2d 510 (1978).

■ Butler also contends that certain of the counts are improperly multiplicious. He argues that counts 37 through 39 are multiplicious because they all involve the Battlefield Boulevard property. However, each count charges a separate act relating to that property. Count 37 alleges that Butler and William Runnells concealed and fraudulently transferred the property to Butler's company, DeJa Corp., on August 28, 1985; this violation is alleged to have continued through September 20, 1985 (three days after the bankruptcy), when Runnells assigned DeJa Corp.'s outstanding note on the property to a third party. Count 38 charges that Butler fraudulently concealed the property from the trustee in bankruptcy from September 17, 1985 to November 29, 1985. Count 39 alleges that Butler, acting through DeJa Corp., fraudulently transferred the property to a third party.

■ The case law construing 18 U.S.C. § 152 holds that, once bankruptcy has been filed, each separate act of transfer or concealment is a separate violation of the statute. *United States v. Melton*, 763 F.2d 401, 402 (11th Cir.1985); *United States v. Moss*, 562 F.2d 155, 160 (2d Cir.1977), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978). In this case, the indictment alleges, and the evidence supports, that each count involves "a separate act, taken at a discrete time, accompanied by the requisite intent." *United States v. Moss*, 562 F.2d at 160.

Butler makes the same multiplicity argument about counts 40 through 43. Count 40 alleges a pre-bankruptcy concealment of the Elbow Road property and a fraudulent transfer to Lucille Runnells. Count 41 alleges post-bankruptcy concealment of the property, then in the name of Lucille Runnells. Count 42 alleges a fraudulent transfer of the property from Lucille Runnells to Butler. Count 43 alleges that Butler fraudulently concealed the property after he purchased it. For the same reasons discussed above, these counts each alleged separate and distinct offenses and are not multiplicious.

■ Butler also argues that counts 37 and 40 are multiplicious because they involve pre-bankruptcy acts of concealment. It is true that the courts have held that there is a single duty to disclose pre-bankruptcy transfers to the trustee, and multiple prefiling transfers or concealments constitute only a single violation. *See United States v. Moss*, 562 F.2d at 160; *Edwards v. United States*, 265 F.2d 302, 306 (9th Cir.1959).

However, count 37 alleges a fraudulent transfer and concealment that continued after the bankruptcy until September 20, 1988, when William Runnells transferred to a third party the proceeds of the sale to Butler. Because count 37 alleges post-bankruptcy activity, it represents a separate offense and is not multiplicious with count 40. Neither are any of the bankruptcy counts inconsistent or "mutually exclusive," as each count alleges a separate and distinct act occurring at a separate point in time.

Butler next challenges counts 47 and 48, the RICO counts, as insufficient as a matter of law, arguing that the defects in the counts alleging predicate acts for these offenses are fatal. In light of the Court's ruling that counts 1 through 36 and 38 through 44 are proper, this argument is without merit. Butler also argues that the RICO statutes are vague and overbroad and thus unconstitutional. He provides no support for this view and makes no more than a bald assertion of unconstitutionality. Further, the RICO statutes have withstood numerous challenges to their constitutionality on these grounds. *See, e.g., United States v. Morelli*, 643 F.2d 402 (6th Cir.), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981); *United States v. Clemente*, 640 F.2d 1069 (2d Cir.), *cert. denied*, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981); *United States v. Swiderski*, 593 F.2d 1246 (D.C.Cir.1978), *cert. denied*, 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); *United States v. Campanale*, 518 F.2d 352 (9th Cir.1975), *cert.*

*denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

▇▇▇ Butler also suggests that the adjudication of the Bankruptcy Court, failing to find a conspiracy among the parties, precludes relitigation of any conspiracy allegation based on collateral estoppel. The doctrine of collateral estoppel holds that an adjudication of an issue of fact or law is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984). In this case, neither the government nor the defendants Butler and Thornton were parties to the original bankruptcy action. *See In re Landbank Equity Corp.,* 83 B.R. 362 (E.D. Va.1987). The doctrine of collateral estoppel has no application here.

Finally, Butler argues that counts 69 through 71, the bank fraud counts, do not sufficiently state or charge an offense as to this defendant. As with counts 1 through 36, Butler makes only a conclusory statement that they are insufficient, but appears to be arguing that the indictment fails to contain a definite statement of the essential facts constituting the offense charged. These counts incorporate by reference paragraphs 1, 2, 3, 5, 13 and 25 through 32 of count 1; these paragraphs taken together are sufficient to state the allegations against Butler.

Butler's Motion in Arrest of Judgment is DENIED.

2. Motion for Judgment of Acquittal

▇▇▇ Butler first argues that, because the jury was unable to reach a verdict as to count 1, the verdict was only "partial" and thus not a "final verdict," and that judgment of acquittal should be entered as to all counts. This argument, which Butler presents without authority, is also without merit. As discussed above in relation to Thornton's Motion, there is no requirement that jury verdicts be consistent, and a jury's inability to reach a verdict on one count does not affect its verdict on other counts. *Hamling v. United States,* 418 U.S. 87, 100–01, 94 S.Ct. 2887, 2898–99, 41 L.Ed.2d 590 (1974).

Butler states that the jury "did not request further guidance from the court as to whether they should deliberate further, in an effort to reach a final and unanimous verdict" and that the partial verdict was in some way a surprise to the defendant. During their deliberations on November 22, 1988, the jurors sent the Court a note asking what they should do if they were unable to reach agreement as to a particular count. After consultation with all counsel, the Court instructed the jury that, if they could not agree on a particular count, they could not return a verdict on that count. The jury was advised to first determine those counts on which they could agree and to keep an open mind as to all counts. The jurors were particularly instructed not to force a verdict if they were not in unanimous agreement. Butler can profess no surprise that the jury was eventually unable to reach agreement on a single count.

▇▇▇ Counsel for the defendant Butler expressed concern about the Court's instruction to the jury to first consider those counts on which they could agree; this objection was overruled. However, counsel made no objection to the Court's instruction that the jury could not return a verdict as to any counts on which they could not reach unanimous agreement. The entire instruction was proper. *See Government of the Canal Zone v. Fears,* 528 F.2d 641 (5th Cir.1976).

▇▇▇ Butler next argues that the evidence was insufficient to sustain a conviction on any of the 50 counts. He asserts that there was insufficient evidence that he knew of or willfully participated in any fraudulent scheme or in general that he acted with criminal intent. As noted above, the evidence and the inferences arising therefrom must be viewed in the light most favorable to the government. There was sufficient evidence, both direct and circumstantial, to show that Butler was aware of the scheme. For example, the government's evidence showed that Butler knew of Landbank's enormous foreclosure losses, that he had actual knowledge of at least one straw loan involving Imelda

Greene and constructive knowledge of the others, that he was aware of "juggling" in Landbank's books as discussed in a June 18, 1984 meeting and that he assisted William Runnells in concealing corporate assets immediately before and after Landbank filed bankruptcy. Circumstantial evidence of knowledge and participation in a conspiracy is sufficient to sustain a conviction. *United States v. MacDougall*, 790 F.2d 1135, 1152 (4th Cir.1986). Knowledge may also be inferred from deliberate disregard for the truth. A jury may find that the defendant had knowledge and intent if the jury believes that the defendant had sufficient information to prompt an investigation into the facts but he deliberately closed his eyes to the obvious. *United States v. Martin*, 773 F.2d 579, 584 (4th Cir.1985). The government presented sufficient evidence from which the jury could find guilt beyond a reasonable doubt.

Butler argues this same point in his Motion for a New Trial, asserting that the verdict was against the weight of the evidence. He cites evidence that he did not actually participate in most loan closings or sign the attorney certification letters sent to Perpetual American Bank and points out inconsistencies and contradictions in the testimony of various witnesses. He asserts that the jury verdict was based upon "impermissible inferences upon inferences."

The fact that the defendant's evidence may have contradicted the government's evidence, or that the defendant sees inconsistencies in the testimony, merely creates a jury question. Counsel had an adequate opportunity to argue Butler's view to the jury. Questions of the credibility of witnesses and ultimate issues such as a defendant's knowledge or criminal intent are peculiarly within the province of the jury. The government presented sufficient evidence which, if the jury chose to believe it, would support a finding of guilt beyond a reasonable doubt.

■ Butler next argues that there was insufficient evidence to support a conviction on counts 37 through 45, the bankruptcy fraud counts. He states that there was insufficient evidence that the subject property was within the estate of a bankrupt debtor (that is, Landbank), that he knew of Landbank's impending bankruptcy before it occurred or that he acted with criminal intent. As discussed above, the government presented extensive evidence that the various companies belonging to William Runnells were merely his "alter egos." The jury could fairly find that the property belonged to Landbank in fact if not in name and that Butler knew of this.

Former Landbank employees Colleen Fravert and Imelda Greene testified that they spoke with Butler several times regarding Landbank's cash flow problems in the spring of 1985, when the company was unable to pay off notes on the properties which were in foreclosure to allow Butler to complete the foreclosure proceedings. This testimony, along with Butler's own testimony about his efforts to get payment from Landbank for his legal fees, all indicate that he was aware of Landbank's serious financial difficulties by mid–1985. The jury could reasonably infer that Butler was aware of the impending bankruptcy. In short, the government presented sufficient evidence to allow the jury to find beyond a reasonable doubt that Butler acted with knowledge and intent.

Butler also challenges the verdicts on several of the bankruptcy counts, asserting that he could not be guilty as a matter of law. First, he argues that he could not be guilty of counts 38 and 39 (Battlefield Boulevard), counts 41 through 43 (Elbow Road) and count 45 (Jade Street) because Butler himself held title to the properties at the time of the subject transactions. As discussed above, property that is not nominally owned by the debtor in bankruptcy may nonetheless be a part of the debtor's estate. In this case, the key is not whether the defendant held title to the property but, rather, what was the defendant's conduct toward the asset of a debtor in bankruptcy. *See United States v. Center*, 853 F.2d 568, 571–72 (7th Cir.1988).

■ Butler also argues that he could not be guilty of any of these counts or of count 44 because the subject transfers

**1348**

were for value. He cites no authority for this view. The statute makes it an offense to fraudulently transfer or conceal property in contemplation of a bankruptcy, to fraudulently conceal property from a custodian or trustee once bankruptcy proceedings have begun or to fraudulently receive any material amount of property from a debtor after bankruptcy proceedings have begun. 18 U.S.C. § 152. A transfer for value, where the proceeds are concealed from the trustee, may still be a fraudulent transfer for purposes of the statute; the fact that value was given is no defense.

■ As to count 44, involving the sale of the Peppertree apartment complex, Butler contends that he merely acted as the closing attorney in a transaction in which the buyers were aware of the bankruptcy and acted on advice of their own counsel. Further, because the transfer was for value, the trustee in bankruptcy took no action against the transaction. The statute applies to "whoever" transfers property with intent to defeat the bankruptcy laws, whether acting "individually or as an agent or officer of any person or corporation." 18 U.S.C. § 152. In this case, Butler was clearly acting as the agent of William Runnells and of Runnington Investment Corp., the nominal owner of the property. That the trustee chose not to attempt to regain the property from the buyers, who may or may not have been bona fide purchasers, is irrelevant to Butler's liability under the statute.

Butler also contests the verdicts on the bankruptcy counts on the grounds that several are multiplicious. These arguments have been thoroughly discussed above in the context of Butler's Motion in Arrest of Judgment.

■ Butler next challenges the sufficiency of the evidence on the RICO counts. He argues that there was insufficient evidence of his criminal intent and that there was insufficient evidence of the predicate acts supporting these counts. As with the other counts, the Court finds that the government presented sufficient evidence of Butler's knowing participation in the enterprise and the conspiracy to support

the jury's verdict, and the Court has already upheld the jury's verdict as to the predicate acts alleged in counts 1 through 36. Butler also asserts that alleged racketeering acts 37 and 41, involving the alleged bribery of State Senator Peter K. Babalas and the post-bankruptcy concealment and transfer of the Jade Street property, respectively, are not sufficiently related to the affairs of the alleged enterprise, Landbank. The evidence showed that the proposed legislation that Senator Babalas helped defeat would have seriously harmed, and probably destroyed, Landbank's continued operations. Attempts by the company to stop this legislation are clearly related to the affairs of the enterprise. The fraudulent transfer of the Jade Street property is also sufficiently related to the enterprise when the enterprise is viewed as a "bust-out" scheme, in which assets are created and then removed for the benefit of the principals. Moreover, the jury verdict on 35 counts of wire fraud was sufficient to support a RICO conviction regardless of the verdicts on counts 37 and 41. Also, as discussed in regard to Thornton's Motion, a jury verdict of guilt on RICO charges will be upheld even if there is an acquittal on the predicate act charges. *United States v. Tinsley*, 800 F.2d 448, 450–52 (4th Cir.1986).

Butler again argues that the RICO statutes are vague and overbroad and therefore unconstitutional. As discussed above, this argument is without merit.

Butler also suggests that the evidence was insufficient as to the RICO counts because the government failed to exclude every reasonable hypothesis of innocence and merely showed "guilt by association." The government is not required to exclude every reasonable hypothesis of innocence if there is sufficient evidence for a jury to reasonably find guilt. *See, e.g., United States v. Livingston*, 816 F.2d 184 (5th Cir.1987); *United States v. Sanchez*, 790 F.2d 1561 (11th Cir.1986); *United States v. Lester*, 749 F.2d 1288 (9th Cir.1984); *United States v. George*, 568 F.2d 1064 (4th Cir.1978).

The last portion of Butler's Motion for Judgment of Acquittal challenges the sufficiency of the evidence on counts 69 through 71, making false statements to a bank. He asserts that there was insufficient evidence that he made the false statements himself, that he actually participated in the loan closings, that he knew of any false statements or even that any statements were indeed false. He also asserts that any false statements were immaterial and too remote as to the defendant to support criminal liability.

The materiality of the false statements is a matter of law for the court to determine. *United States v. Whaley,* 786 F.2d 1229, 1231–32 (4th Cir.1986). The Court has already determined that false statements in loan documents are material to prospective purchasers of the loans. Because Butler's signature was on some of the documents and he was represented to be the closing attorney, the statements are not too remote for liability to attach.

The evidence was clear that these transactions were "straw" loans, that the stated down payments were never made and that the purported borrowers never intended to receive the proceeds or repay the loans. There was also sufficient evidence for the jury to infer that Butler knew the true nature of the loans. In addition, Butler may be held liable as an aider and abettor even if he himself did not submit the false documents to the bank. *See United States v. Thompson,* 811 F.2d 841 (5th Cir.1987); *United States v. Price,* 763 F.2d 640 (4th Cir.1985).

Butler's Motion for Judgment of Acquittal is DENIED.

### 3. Motion for a New Trial

Butler has moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, arguing that "the weight of the evidence preponderates so heavily against the verdict that a serious miscarriage of justice will occur unless the verdict is set aside."

Butler argues that the government's case consisted merely of "inferences upon inferences drawn from uncorroborated testimony that ... is subject to questions of credibility," *citing United States v. Simms,* 508 F.Supp. 1188 (W.D.La.1980). In this case, although much of the evidence was circumstantial, the evidence was overwhelming and the testimony implicating Butler was in no way uncorroborated.

The government's evidence showed that Butler was more involved with Landbank than merely as a real estate attorney. He incorporated Landbank and many of its affiliates and was instrumental in obtaining the original funding for Landbank from the Bank of Virginia Beach. Even after he resigned from the Landbank Board of Directors, he remained as a cosigner on various notes and lines of credit and represented Landbank in the closing on the Perpetual American Bank warehousing line. Butler also made a personal loan to enable Landbank to finance one of its real estate projects. Clearly, Butler was more than a mere closing attorney.

The evidence also showed that Butler was named as closing attorney on the bulk of the insider, "straw" loans. By his own admission, he closed a sale to "real people" of a property on which his son, Frank E. Butler, IV, was the straw borrower.

Former Landbank employees Imelda Greene, William Duckworth and William Deal testified that, at various times, each of them discussed with Butler some aspect of the insider loan transactions. T.C. Lea, an attorney on Landbank's staff, testified that he consulted with Butler in drafting indemnification agreements to placate the insiders about their liability on the loans.

Butler's own testimony contradicted some of this evidence. For example, he denied having spoken to Greene and Duckworth about their loans or discussing the indemnification letters with Lea. He also testified that he failed to notice his son's name as seller on the documents in the loan closing file. Butler points to inconsistencies in the testimony of Duckworth and Deal and also argues that the fact that other attorneys performed legal work for Landbank is proof of his lack of knowledge and criminal intent. While Butler was free to argue to the jury that he, like others,

was duped by the Runnellses, evidence of others' lack of knowledge is not dispositive of Butler's own state of mind. The jury was free to weigh the credibility of the witnesses and to accept or reject Butler's testimony and his view of the evidence. There was sufficient evidence to support a jury finding that Butler was aware of, and willfully participated in, the insider loan transactions. Clearly, the jury verdict was not manifestly against the weight of the evidence.

■ Butler next argues that the "unprecedented complicated and complex nature of the prosecution" so overwhelmed and confused the jurors that they were unable to comprehend the evidence and the issues and returned a verdict based on guilt by association. Admittedly, the trial was long and the evidence was complex. However, juries have often handled difficult, complicated cases. *See, e.g., United States v. Feldman*, 853 F.2d 648, 653 (9th Cir. 1988). In this case, the jury was carefully selected and, throughout the trial, the jurors appeared to be intelligent, attentive and patient. The jurors clearly took their responsibilities seriously, as shown by their seven days of deliberation and their several requests for additional instruction from the Court. The jurors even requested a copy of the government's index of the exhibits; when their request was denied, they indicated that they would spend the time necessary to catalogue the tens of thousands of exhibits themselves. The verdict indicates that the jury carefully considered each count and each defendant separately.

Butler also cites the post-verdict comments of a juror to a local newspaper regarding the evidence. Discussing the issue of the defendants' knowledge of the scheme, the juror stated: "I don't think Bill Runnells told anyone everything, not even his wife. Did he tell these guys he was making all these insider loans? That was the sticking point on a lot of things. Some felt one way, that they knew everything. Others didn't." *Landbank attorney, accountant guilty of fraud*, Virginian–Pilot, Nov. 29, 1988, at A1, A2. Butler asserts that this description of the deliberations is "a clear indication that there was disagreement and lack of unanimity on the central question of defendant, Butler's alleged participation in the 'insider' loan situation; and that the disagreement endured until the time of verdict."

■ The offhand remarks of a single juror to a newspaper reporter, suggesting disagreement among the jurors at some point during the deliberations, is insufficient to warrant an assumption that the verdict was not the result of the jury's considered judgment on all the counts. Moreover, the same juror also commented that the jury "went over the evidence time and time again. It was so involved we just had to take it in steps, consider each charge, what evidence was involved, then move on." He indicated that the jury was mindful of its responsibility to try the two defendants apart from Runnells, "the head man." *Id.*

In addition, Butler was well aware from the extensive discovery of the complicated nature of the government's case. If Butler believed the case was inappropriate for a jury determination, he was free to request a bench trial under Rule 23(a).

Finally, Butler asserts that a new trial should be granted based on his exceptions to the Court's jury instructions. He cites no specific objections but merely refers to his earlier objections at the trial.

This final argument is without merit. The Court and all counsel spent several days developing the lengthy charge. In the end, Butler objected to only eleven individual instructions. The defendant's objections were overruled either because his proposed substitutions were incorrect statements of the law or because the proposed instructions were unduly duplicative or confusing to the jury. Butler has failed to demonstrate how the instructions as a whole were so deficient as to require a new trial.

Butler's Motion for a New Trial is DENIED.

4. Motion to Dismiss the Indictment

Butler has also renewed his pretrial Motion to Dismiss various counts of the indict-

ment. All of the arguments relating to this Motion have been fully discussed in the context of Butler's other Motions. The Motion to Dismiss is DENIED.

In summary, the Motions of each of the defendants are DENIED.

IT IS SO ORDERED.