**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JAMES CEDRIC HAYDEN, a/k/a
Reginald James Wilder,
Defendant-Appellant.

No. 94-5861

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

TOMEL K. LUCAS, a/k/a Angelo
Berlin,
Defendant-Appellant.

No. 94-5871

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

REGINALD EUGENE HAYDEN, a/k/a
Bubba,
Defendant-Appellant.

No. 94-5877

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Chief District Judge.
(CR-94-78-R)

Argued: February 2, 1996

Decided: May 31, 1996

Before WILKINSON, Chief Judge, and RUSSELL and MURNAGHAN, Circuit Judges.

_____

Affirmed in part and reversed in part by published opinion. Judge Murnaghan wrote the opinion, in which Chief Judge Wilkinson and Judge Russell joined.

_____

**COUNSEL**

**ARGUED:** Terry N. Grimes, KING, FULGHUM, SNEAD, NIXON & GRIMES, P.C., Roanoke, Virginia, for Appellant Reginald Hayden; Deborah S. Caldwell-Bono, Roanoke, Virginia, for Appellant James Hayden; Paul S. Brenner, New York, New York, for Appellant Lucas. Ray B. Fitzgerald, Jr., Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Cynthia R. Micklem, Law Intern, T.C. Williams School of Law, Charlottesville, Virginia, for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

A jury convicted Reginald Hayden, James Hayden, and Tomel Lucas (collectively "the defendants") of conspiracy to possess with the intent to distribute crack cocaine, among other drug-related offenses. The defendants appeal their convictions and sentences on various grounds. We affirm all convictions and sentences, with the exception of James Hayden's conviction and sentence under 18 U.S.C. § 924(c) for using or carrying a gun during and in relation to drug trafficking on June 11, 1994. On that conviction, we reverse.

I.

The defendants were all members of a drug conspiracy trafficking cocaine from New York City to Roanoke, Virginia. The leader, James Hayden ("James"),**1** would arrange to obtain cocaine in New York and then to transport it to Roanoke. Once the drugs arrived in Roanoke, James and Tomel Lucas ("Lucas") would cook and package the powder cocaine into "crack cocaine." Reginald Hayden ("Reginald") purchased crack cocaine from James and then distributed the crack cocaine to various individuals. James and Lucas would also distribute the crack cocaine to various buyers including a confidential informant, Christopher Powell ("Powell").

A jury convicted all defendants of conspiracy to possess crack cocaine with the intent to distribute. Additionally, the jury convicted James of two counts of distribution of crack cocaine, two counts of possession with intent to distribute crack cocaine, and two counts of using or carrying a firearm during and in relation to a drug trafficking crime. They also convicted Lucas of one count of possession with intent to distribute crack cocaine.

The sentencing judge found that Reginald was a career offender pursuant to U.S.S.G. § 4B1.1 and sentenced him to 360 months. James received 592 months and Lucas 168 months.

II.

The defendants raise numerous grounds for appeal. We address each in turn.

A. <u>Removal of Juror</u>

The defendants (collectively) contend that the district court erred when it refused to grant their motion for a mistrial following the removal of the only African-American juror from the panel during the presentation of evidence. During the voir dire, the judge asked the

_____

**1** In order to distinguish James Hayden from Reginald Hayden, we refer to the two men by their first names "James" and "Reginald."

potential jurors if they knew any of the witnesses. The only African-American, James Williams ("Williams"), answered that he did not. It then developed, however, that Williams knew Powell, a government informant and witness. However, Williams knew Powell only by his street name "Champ" and thus had not recognized the name Powell. Despite recognizing Powell when he testified the first day of trial, Williams did not speak up. Powell, however, told a prosecutor that he knew Williams. On the third day of trial, the district judge called Williams to the stand and out of the presence of the jury asked him if he knew Powell. Williams admitted that he knew Powell. Williams, a hair dresser, stated that he had cut Powell's hair. The judge therefore dismissed Williams as a juror and replaced him with an alternate.

The defendants moved for a mistrial, which the district judge denied. We review a district court's refusal to grant a mistrial for abuse of discretion. United States v. West, 877 F.2d 281, 287-88 (4th Cir. 1989), cert. denied, 493 U.S. 869 (1989), and cert. denied, 493 U.S. 959 (1989), and cert. denied, 493 U.S. 1070 (1990). In order to demonstrate an abuse of discretion, the defendants must show prejudice. Id. at 288.

The defendants argue that the presence of a juror who knew a witness prejudiced them even though the juror was dismissed before deliberations began. In exercising its discretion to grant a mistrial, the district court should consider whether there are less drastic alternatives to a mistrial that will eliminate any prejudice. United States v. Smith, 44 F.3d 1259, 1268 (4th Cir.), cert. denied, 115 S. Ct. 1970 (1995). In the instance of a biased juror, that juror "can be dismissed and replaced with an alternate juror." United States v. Thompson, 744 F.2d 1065, 1068 (4th Cir. 1984); Fed.R.Crim.P. 24(c). Here, the judge did just that--he removed the juror and replaced him with an alternate juror, a measure which eliminated the prejudice of the juror knowing a witness, but did not necessitate the expense and delay of a mistrial. We therefore find no prejudice.

The defendants also argue that dismissal of the only African-American on the jury could have led the remaining jurors to conclude that the dismissed juror was untrustworthy and, by implication, that the defendants, who were also African-American, were also untrustworthy. We disagree. Dismissal of a juror does not necessarily mean

4

that the juror is untrustworthy. The district judge explained the dismissal of Williams to the jury. Furthermore, Williams's dismissal was necessary to avoid the prejudice created by a biased juror. We therefore do not find that the district court abused its discretion in dismissing Williams and refusing to grant a mistrial.

B. Motion for Acquittal

The defendants (collectively) argue that the government failed to meet its burden to prove beyond a reasonable doubt each element of the offense as required by In re Winship, 397 U.S. 358 (1970). A reviewing court must uphold a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Based on a review of the record, we find that there was sufficient evidence to convict the defendants on each count for which the jury found them guilty.

C. Sentencing Disparity Between Crack Cocaine
and Powder Cocaine

The defendants (collectively) also argue that their sentences should be reversed because Congress's decision to punish convicted crack cocaine dealers more severely than powder cocaine dealers lacks any rational basis and, therefore, is unconstitutional. The Fourth Circuit has reviewed that precise issue in the past and found that "Congress could rationally have concluded that distribution of cocaine base [crack] is a greater menace to society than distribution of cocaine powder and warranted greater penalties because it is less expensive and, therefore, more accessible, because it is considered more addictive than cocaine powder and because it is specifically targeted toward youth." United States v. Thomas, 900 F.2d 37, 39-40. (4th Cir. 1990). Many other circuits have also upheld the sentencing disparity between crack cocaine and powder cocaine. See , e.g., United States v. Singleterry, 29 F.3d 733, 740 (1st Cir.), cert. denied, 115 S. Ct. 647 (1994); United States v. Stevens, 19 F.3d 93, 97 (2d Cir. 1994); United States v. Reece, 994 F.2d 277, 278-79 (6th Cir. 1993) (per curiam); United States v. Williams, 982 F.2d 1209, 1213 (8th Cir. 1992); United States v. Frazier, 981 F.2d 92, 95 (3d Cir. 1992) (per

5

curiam), <u>cert. denied</u>, 113 S. Ct. 1661 (1993); <u>United States v. Lawrence</u>, 951 F.2d 751, 754-55 (7th Cir. 1991); <u>United States v. Galloway</u>, 951 F.2d 64, 65-66 (5th Cir. 1992) (per curiam).

The defendants argue that a recent report by the United States Sentencing Commission which concludes that the disparity is not rational should change the court's decision on the matter. A Sentencing Commission report does not change our earlier holdings. Furthermore, Congress rejected the Sentencing Commission's report and recommendation and refused to change the disparity in crack cocaine versus powder cocaine sentences. Thus, we find the defendants' arguments as to the sentencing disparity without merit.

D. <u>Reginald Hayden's Request for a Mistrial</u>

The defendants--individually--also raise a number of grounds for appeal. Reginald contends that the district court erred by failing to declare a mistrial after a government witness mentioned his prior imprisonment. Monique Taylor, Reginald's daughter, mentioned during her testimony that Reginald had been in prison. **2** The defense immediately objected and the district judge instructed the jury to disregard Taylor's testimony.**3** Reginald's counsel moved for a mistrial which the district judge denied.

_____

**2** The precise colloquy proceeded as follows:

> Q. Did Mr. James Hayden come and stay with you with your permission--
>
> A. Yeah.
>
> Q. -- for a few days early in the spring?
>
> A. Yeah.
>
> Q. When was that?
>
> A. I think it was around March 5th. It was after my birthday, two days after my birthday.
>
> Q. And his reason for being in town was what?
>
> A. He had came because my father had just got out of prison. He came to, you know, see how --

**3** The district judge cautioned:

> All right. Ladies and gentlemen, disregard the statement of why Mr. James was down to see Reginald Taylor or Reginald Hayden. That should not have come out in the evidence and I just ask you to disregard it.

6

As stated earlier, we review a district court's refusal to grant a mistrial for abuse of discretion. West, 877 F.2d at 287-88. In order to demonstrate an abuse of discretion, the defendants must show prejudice. Id. at 288.

In similar cases, where a passing and brief remark was made referencing a prior criminal record, but then a curative instruction was issued, the Fourth Circuit has held that "no prejudice exists . . . if the jury could make [an] individual guilt determination by following the court's cautionary instructions." United States v. Dorsey, 45 F.3d 809, 816 (4th Cir.), cert. denied, 115 S. Ct. 2631 (1995). Indeed, the court has recognized that:

> [w]hile we have reversed convictions in cases where evidence of other crimes had been improperly presented, in those cases the inadmissible evidence was not only prejudicial, but had been purposely introduced by the prosecution . . . Absent such misconduct on the part of the Government counsel, the courts generally have discerned no reversible error where the trial court has acted promptly in sustaining an objection and advising the jury to disregard the testimony.

Id. at 817 (citation omitted).

The remark was brief, not repeated, and the trial court immediately sustained an objection and advised the jury to discount the testimony. The defendants, however, allege that the remark came out in response to a leading question by the prosecutor. We do not find that the remark was made in response to a leading question; nor do we find that Reginald suffered any prejudice in light of the cautionary instructions.

7

E. Rule 404(b) Material Against James Hayden

James argues that the court erred when it admitted evidence that he had written a threatening letter to a witness.[4] Additionally, he objects to evidence that he telephoned Powell to threaten Powell and his family if Powell testified.[5] James argues that the letter and telephone conversation constituted impermissible evidence under Rules 404(b) and 403 of the Federal Rules of Evidence and, therefore, that the judge erred by allowing them in as evidence. The admission of evidence by the district court under Rule 404(b) may be overturned only for an abuse of discretion. United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991).

Rule 404(b) prohibits evidence of other crimes or bad acts to show bad character and propensity to violate the law. However, evidence of other bad acts is admissible for certain purposes unrelated to a defendant's bad character, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Evidence of witness intimidation is admissible to prove consciousness of guilt and criminal intent under Rule 404(b), if the evidence (1) is related to the offense charged and (2) is reliable. See United States v. Billups, 692 F.2d 320, 330 (4th Cir. 1982), cert. denied, 464 U.S. 820 (1983).

_____

[4] The letter read as follows:

> That's right. It's me mother fucker. If I get close to you just one time, I am going to pull your neck off of your fucking shoulders and shit down your punk ass neck. Yeah you took my dope and didn't pay me. So you better be worried about a conspiracy charge. You have fucked so many people around in this jail and in this town. So you better watch your back because you don't know when it comes. But you can be sure that it's coming. And when it does the blood is going to flow. So get ready to join your nasty stinking dead ass wife. You sorry mother fucker. Boo. I know you hear me coming.

[5] In the telephone conversation, the caller stated:

> I don't care if this telephone is wired, and I don't care if your buddy, Tom, is listenin. If I get any time out of this . . . I'm gonna get you, your family and your baby.

8

James argues that the evidence was unreliable as to the letter. He contends that there was no proof that he, James Hayden, had actually written the letter. There was no handwriting analysis, nor were there any fingerprints, and the letter was not signed--it was sent anonymously. The letter's content, however, pointed to James as its author. The letter referred to the recipient as owing the writer money for drugs unpaid for. The recipient of the letter testified that James Hayden was the only person to whom he had ever owed drug money and about whom he was planning to testify. Thus, the recipient established the identity of the writer of the letter to a fairly reliable degree. As for the telephone conversation, Powell was able to identify the voice as James.

James also argues that even if the letter and the telephone conversation were admissible under 404(b), they were inadmissible under Rule 403. Rule 403 prohibits evidence where its probative value is substantially outweighed by its prejudicial effect.

James argues that the prejudicial effect of the telephone conversation and the foul language of the letter far outweighed any probative value. The probative value of James's threats, however, were not minimal as he contends. The threats went directly to establish criminal intent and guilty consciousness. Thus, the probative value outweighed the prejudicial effect of the statements.

F. Amount of Drugs Attributed to James Hayden

James argues that the district court incorrectly attributed too many drugs to him. We have reviewed the record and find that the district court did not err in its calculation of the drugs attributable to James Hayden.

G. Two-level Enhancement of James Hayden's Offense Level for Obstruction of Justice

The district court enhanced James's sentence by two levels for obstruction of justice based on the threatening letter and the telephone conversation where he attempted to discourage witnesses from testifying. As for the letter, James argues that the letter was anonymous and

that there is no proof that he was the one who sent it. As previously explained, based on the letter recipient's testimony and the content of the letter, a trier of fact could reasonably infer that James wrote the letter.

As for the phone call, James argues that it is not obstruction of justice for an individual to caution a potential witness against perjury. As evidence of his innocence, James points out that he prefaced his threat with "you know that is not my voice on the tape [referring to one of the tapes of a drug deal]." James's argument is absurd. He threatened Powell and his family if Powell testified. That is not the action of an innocent man warning against perjury, but of someone obstructing justice by threatening a witness.

H. Tomel Lucas's Motion for Severance

Lucas argues that the court committed reversible error in his case by denying his motion for a severance. Lucas contends that he suffered irreparable prejudice because the evidence against him was minimal when compared to his co-defendants and because the majority of prejudicial testimony did not apply to him, especially the evidence regarding James's threats to witnesses.[6]  In particular, he relies on the fact that the judge failed to give any curative instructions on the Rule 404(b) evidence admitted against James regarding the threats James made to witnesses.

Rule 8(b) of the Federal Rules of Criminal Procedure provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction." In such cases the federal system prefers joint trials because they promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro v. United States, 113 S.Ct. 933, 937 (1993) (quoting Richardson v. Marsh, 481 U.S. 200, 210 (1987)). Rule 14 of the Federal Rules of Criminal Procedure, however, provides that joinder, even when appropriate under 8(b), may be so prejudicial that the defendants should be tried separately. Id.

_____

[6] Additionally, Monique Taylor testified that Reginald called her and asked her not to say that he had been in New York.

10

The mere showing of prejudice is not enough to require severance. Zafiro, 113 S.Ct. at 938. Rather, tailoring of relief, if any, for any potential prejudice resulting from a joint trial is left to the district court's sound discretion. Id. Thus, the court reviews a district court's refusal to grant a severance for abuse of discretion. West, 877 F.2d at 287-88. That discretion is abused "only if there[wa]s a serious risk that a joint trial would [have] compromis[ed] a specific trial right of one of the defendants, or prevent[ed] the jury from making a reliable judgment about guilt or innocence." Zafiro , 113 S.Ct. at 938.

Often, less drastic measures, such as limiting instructions, act to cure any risk of prejudice. Id. Indeed, the government recognized the curative effect of limiting instructions when arguing against a severance based on 404(b) materials. Counsel stated "if that [404(b)] evidence is admitted, it's going to be extremely brief and extremely precise, and the Court could give a limiting instruction pointing out that Mr. Lucas has not allegedly threatened anybody or tried to alter anyone's testimony." Following that argument, the court denied the motion for a severance by concluding that there were no grounds for severing.

Ultimately, however, the court gave no limiting instructions; but, none were requested by Lucas's counsel.[7] While we do not approve of the failure to give limiting instructions in a joint trial, the failure to give them does not per se constitute reversible error as to the district judge's refusal to sever the trial.[8] Rather, our ultimate inquiry is whether the trial "compromise[d] a specific trial right of . . . the defendant[ ], or prevent[ed] the jury from making a reliable judgment about guilt or innocence." Zafiro, 113 S.Ct. at 938. Under that inquiry, we find no error in the refusal to grant a motion for severance.

The evidence against Lucas was fairly strong. Powell testified that Lucas weighed the crack cocaine as James cooked it. Lucas also, according to Powell, helped distribute the crack cocaine and made a

_____

[7] The government does not contest that no limiting instructions were given.
[8] James has not appealed the district court's failure to give limiting instructions.

11

trip to New York to purchase cocaine. Other evidence corroborates Powell's testimony as to Lucas's trip to New York: on an audio tape, Lucas admitted to traveling to New York to pick up cocaine; one witness testified that a person with an alias Lucas was known to use had purchased an airplane ticket to New York and made the trip; and Monique Taylor testified that she saw Lucas in New York during the time the alleged trip occurred. Another witness testified that he purchased cocaine from Lucas. Additionally, the case was not so complex that the jury could not separate the evidence as to each defendant. For those reasons, we find that a jury could have made an individual determination as to Lucas's guilt and that any "spill-over" effect from the 404(b) evidence admitted against James did not prejudice Lucas.

I. 18 U.S.C. § 924(c) Convictions

James Hayden was convicted of two counts of using and carrying a firearm during or in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). At oral argument, counsel argued that under the standard set forth by the Supreme Court in Bailey v. Robinson, 116 S. Ct. 501 (1995), there was insufficient evidence to find James guilty of carrying or using a firearm on May 14, 1994 and on June 11, 1994.

As to the May 14 count, the evidence consisted of: Powell's testimony that he had seen James with a nine millimeter automatic pistol which James picked up, placed in his pants, and carried with him when he went to get cocaine. As to the June 11 count, the evidence consisted of: (1) two weapons that were found in an apartment, one of which was seized from the bedroom; (2) the fact that James was in that apartment on June 11 cooking powder cocaine into crack cocaine and selling crack from the apartment; (3) taped conversations from the apartment involving James, Lucas, and Powell discussing trading cocaine for guns (they were not actually conducting the trade --just discussing doing so); and (4) evidence that James had carried a similar gun to the one found in the bedroom during other drug transactions.

In the recent opinion of Bailey v. United States , 116 S. Ct. 501 (1995), the Supreme Court clarified what is necessary to convict a

12

defendant under § 924(c)(1) of using a firearm during drug trafficking. In order to demonstrate use, the government must demonstrate more than mere possession, proximity, and accessibility. "[T]he Government must show active employment of the firearm" by the defendant. Bailey, 116 S. Ct. at 506. Thus, "use" requires actual "use"-- "action and implementation" such as "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm"--not mere possession or intended use. Id. at 506, 508.

As to the June 11 count, the evidence presented by the prosecution does not meet the Bailey standard for "use." The evidence indicates only that the gun was stored in a location accessible to James. There is simply no evidence of active use. See United States v. Garcia, 77 F.3d 274, 276-77 (9th Cir. 1996) (reversing conviction under 18 U.S.C. § 924(c) because the defendant was not actively using a firearm where a machinegun was found in an upstairs bedroom in house where the defendant was arrested); United States v. Wilson, 77 F.3d 105, 110 (5th Cir. 1996) (same where weapons were seized from a house owned by the defendant and where drug money was counted and stored); United States v. Abdul, 75 F.3d 327, 329-30 (7th Cir. 1996) (vacating conviction and sentence under 18 U.S.C. § 924(c) because the weapon was merely under a bed in the same room as the defendant and not actively used by him); United States v. Jones, 74 F.3d 275, 276 (11th Cir. 1996) (reversing 18 U.S.C.§ 924(c) conviction and sentence because weapon was merely being stored).

James was charged, however, with both using and"carrying" a firearm, so we must also evaluate whether the evidence was sufficient to convict him for carrying a firearm. In Bailey the Supreme Court noted that the "carry" prong of § 924(c)(1) would bring some offenders under the reach of the statute who would not satisfy the "use" prong. 116 S. Ct. at 509. While the Court did not directly address what was needed to establish that a defendant "carried" a weapon in relation to a drug trafficking crime, the Court clearly explained that "use" and "carry" were distinct and different from mere"possession." "[T]he inert presence of a firearm, without more, is not enough to trigger § 924(c)(1)." Id. at 508. The Court further explained that "[a] defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds." Id.; see also United States v. Riascos-Suarez, 73 F.3d 616, 622-23 (6th Cir. 1996) (finding that in order to

13

be convicted of carrying a gun under § 924(c)(1), the firearm must be immediately available for use--on the defendant or within his or her reach).

The evidence is insufficient to convict James of carrying a firearm on June 11. The bulk of the evidence consists of testimony that James possessed the pistol and that it was stored somewhere in a bedroom where he was on a day he was cooking and distributing crack cocaine. Additionally, there is evidence that he carried a similar pistol in a prior drug transaction. That evidence does not support a finding that the weapon was on James or within his reach available for immediate use. It merely indicates that James stored a weapon near his drug-dealing activities. Thus, we reverse James's conviction and sentence for using and carrying a gun on June 11, 1994.

As to the May 14 conviction, however, the evidence clearly is sufficient to convict James of carrying a pistol. A witness testified that James picked up a nine millimeter automatic pistol, placed it in his pants, and carried it with him. In Bailey the Supreme Court explained in distinguishing "use" from "carry" that "when an offender keeps a gun hidden in his clothing throughout a drug transaction" that would constitute carrying a gun for purposes of § 924(c)(1). Id. at 507. Thus we affirm the May 14 conviction.**9**

In reviewing the § 924(c) convictions, we considered the United States' Reply Brief on that matter. Thus, we also grant the motion by the United States, filed January 22, 1996, to reply to the appellants' supplemental authority.

Accordingly, we

AFFIRM IN PART AND REVERSE IN PART.

_____

**9** James also argues that the evidence was insufficient to sustain his convictions for using and carrying a gun during drug trafficking because there was no credible evidence before the jury that the drugs introduced to demonstrate drug trafficking were seized from the defendants. We find that argument meritless.

14