**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5291

ROGER DALE JONES,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5292

CYNTHIA DODSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5360

EARL NATHANIEL LOGAN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5361

DONALD EDWARD WOODS, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                             No. 95-5370

LITTLE TOM CHILDRESS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                             No. 95-5371

TINA MICHELLE REID,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                             No. 95-5372

TIMOTHY BAKHARI MOTLEY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                             No. 95-5373

LAWSON JACOB DODSON,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CR-94-106)

2

Argued: April 11, 1997

Decided: April 22, 1998

Before RUSSELL* and WIDENER, Circuit Judges, and DUFFY,
United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded with instructions by
unpublished opinion. Judge Widener wrote the opinion, in which
Judge Duffy joined.

_____

**COUNSEL**

**ARGUED:** Thomas Erwin Wray, Roanoke, Virginia; Mark D. Kidd,
OSTERHOUDT, FERGUSON, NATT, AHERON & AGEE, Roa-
noke, Virginia; Brian H. Turpin, Danville, Virginia; John Stuart
Bruce, FEDERAL PUBLIC DEFENDER'S OFFICE, Greensboro,
North Carolina; Joseph M. Garrett, Sr., William Allan Garrett, Sr.,
GARRETT & GARRETT, Danville, Virginia, for Appellants. Ray B.
Fitzgerald, Jr., Assistant United States Attorney, Charlottesville, Vir-
ginia, for Appellee. **ON BRIEF:** Kirk A. Ludwig, MARTIN, HOP-
KINS & LEMON, P.C., Roanoke, Virginia, for Appellant Logan;
Dorothy P. Dillon, Rocky Mount, Virginia, for Appellant Woods.
Robert P. Crouch, Jr., United States Attorney, George E. Buzzy, Spe-
cial Assistant United States Attorney, Charlottesville, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

*Judge Russell participated in the hearing of this case at oral argument
but died prior to the time the decision was filed. The decision is filed by
a quorum of the panel. 28 U.S.C. § 46(d).

**OPINION**

WIDENER, Circuit Judge:

This case arises from the prosecution of 27 defendants for operating a cocaine conspiracy in the Danville, Virginia, area. Eight of the defendants have joined in this appeal to challenge their convictions on various grounds. The only assignments of error we find meritorious, however, are the claims of one defendant that his conviction under 18 U.S.C. § 924(c), for using or carrying a firearm during a drug trafficking crime, should be vacated and he be subject to a new trial in light of Bailey v. United States, 516 U. S. 137 (1995). We therefore vacate this § 924(c) conviction and associated sentence but otherwise affirm the judgment of the district court.

I.

In late August 1994, a grand jury returned an indictment against 25 defendants, including appellants Roger Jones, Cynthia Dodson, Earl Logan, Donald Woods, Little Tom Childress, Tina Reid,**1** and Timothy Motley. A superseding, 71-count indictment was returned in September 1994. This indictment added several offenses and two defendants, including appellant Lawson Dodson. The indictment's first count charged the defendants generally with conspiracy to distribute and to possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The remaining counts charged various defendants with substantive drug and firearms violations under Titles 18 and 21, U.S. Code. Defendant Lawson Dodson was also named in a criminal forfeiture count.

On November 18, 1994, the district divided the defendants into two groups for trial. The trial of the first group commenced on November 30, 1994. The eight defendants involved in this appeal were placed into the second group, comprising ten defendants in all. This latter group stood trial beginning January 23, 1995.

_____

**1** The indictment spells Tina Reid's name "Reid," but other documents spell the name "Reed." We use Reid since that will be in the style of the case.

4

The trial record indicates that a large group of people, a number of whom were surnamed Dodson and were related, conducted an extensive series of crack and powder cocaine sales out of three main locations in the Danville area for several years. These three locations were called "the farm," "the fortress," and "Frazier Road." Carroll Dodson, who is not involved in this appeal, was named as the group's leader. Defendants Timothy Motley and Lawson Dodson were identified as individuals who delivered cocaine to the various locations for sale. Defendants Roger Jones and Little Tom Childress were among the street-level workers who serviced customers on-site. The group operated the fortress and Frazier Road locations 24 hours a day, seven days a week, while sales at the farm ended around 12:00 p.m. each night. In three years, the group was out of cocaine on just two days.

Police executed two search warrants at the fortress in January 1993, leading to charges against, among others, Little Tom Childress. An intensive investigation of the group's activities began in Spring 1993 following these raids. As part of this investigation, Francis Barnwell, sworn in as a deputy sheriff, was placed in a long-term undercover role. Barnwell made many purchases of crack cocaine at the farm, the fortress, and Frazier Road using an automobile equipped with a television camera and recorder. These specific purchases were charged as substantive counts in the indictment against Jones, Childress, Motley, and Earl Logan. A search warrant executed December 17, 1993 led to charges of possession of cocaine base with intent to distribute against Cynthia Dodson, Tina Reid, and Donald Woods.

At the close of the government's evidence, the district court granted the defendants' motions for judgment of acquittal on some counts. The jury later returned a verdict of guilty on all remaining counts. The district court entered judgment against the defendants and sentenced them in April and May 1995.

Eight defendants now appeal, maintaining that the district court committed several errors. All of the defendants contend that the district court improperly dismissed a juror mid-trial after one of the government's witnesses testified that he was acquainted with the juror. They also assert that the court made prejudicial remarks to the remaining jurors after the dismissal. Next, Roger Jones claims that the case against him should be dismissed because he was tried in viola-

5

tion of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174. Lawson Dodson and Childress argue that the government knowingly used the perjured testimony of informant Alonza Falden to obtain their convictions.[2] Little Tom Childress contends the evidence is insufficient to find him guilty of carrying or using a firearm during a drug trafficking crime under 18 U.S.C. § 924(c) and that the court improperly attributed 33.1 grams of crack cocaine to him for sentencing purposes. Timothy Motley also contests the sufficiency of the evidence to support his conviction under 18 U.S.C. § 924(c). Tina Reid challenges the district court's refusal to suppress her post-arrest statement because she did not receive the statement until one month before trial. Cynthia Dodson maintains that the denial of her motion for severance resulted in irreparable prejudice and that the court should have granted her motion for judgment of acquittal on the substantive possession count of the indictment. In addition, Jones claims that the government improperly directed the jurors' attention to certain portions of the government's evidence to his prejudice. Jones and Motley further contend that the district court should not have granted the jury's request to view them individually. Finally, all defendants except Childress attack the sufficiency of the evidence to support their convictions for conspiracy and the remainder of the substantive counts.[3]

II.

A. Removal of Juror

All defendants in this appeal complain that the district court erred in dismissing a juror mid-trial. During voir dire, several potential witnesses were named and the court asked the array of jurors whether

_____

[2] In their summary of argument, the defendants state that Lawson Dodson and Childress challenge the government's use of allegedly perjured testimony (defendants' Issue IX). Other places in the brief may indicate that Childress does not join issue on this point. In an abundance of caution, we count Childress as joining Issue IX.

[3] In their statement of the issues, the defendants exclude Childress from the challenge to the sufficiency of the evidence (defendants' Issue XIII). Other places in the brief indicate Childress may have joined issue on Issue XIII. As with Issue IX, n.2, we count Childress as joining issue on issue XIII.

they knew any of them. Apparently, Francis Barnwell was not named as a witness at that time. A panel of 14 jurors, including two alternates, was eventually seated. At the end of the third day of trial, government witness Francis Barnwell informed the prosecutor that he recognized a juror. Out of the jury's presence, Barnwell testified that he had come into contact with one of the jurors, James Helton, during an earlier undercover drug investigation in another locality. Barnwell stated that he had seen Helton in the presence of one of Helton's friends who was a heavy user of cocaine approximately ten times and that he had been to the juror's house on one occasion. He knew where the juror lived and where the juror worked. The government objected to juror Helton's continued presence on two bases: his asserted acquaintance with Barnwell and his alleged familiarity with people who used cocaine. The next morning, after listening to counsel on both sides of the issue and without calling Helton to testify, the district court elected to remove Helton and to seat an alternate juror over the defendants' objection. The defendants then moved for a mistrial, which the district court denied.

We are of opinion that if the district court had been aware of all the relevant facts at the time of voir dire, Helton would have been excused for cause at that time. Thus, the district court's decision to excuse Helton as soon as the court became aware of the facts regarding Helton's connection to Barnwell did not constitute error.[4] In fact, the district court's dismissal of Helton was proper in order to avoid the potential prejudice created by a biased juror. See United States v. Hayden, 85 F.3d 153, 157 (4th Cir. 1996). Therefore, we affirm the district court's decision to excuse Helton.

We review a district court's denial of a mistrial for abuse of discretion. United States v. West, 877 F.2d 281, 287-88 (4th Cir.), cert. denied, 493 U.S. 959 (1989). The district court's decision to substitute an alternate juror rather than to declare a mistrial is consistent with Fed. R. Crim. P. 24(c) and the principles set forth in United States v. Hayden, 85 F.3d 153, 157 (4th Cir. 1996). Before making its decision,

_____

[4] In fact, we note that the district court's refusal to excuse Helton for cause after becoming aware of all the relevant facts would constitute reversible error. United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977).

the district court heard argument from counsel and considered the other available options. We therefore find that the district court did not abuse its discretion by denying the defendants' motion for a mistrial.**5**

III. <u>SPEEDY TRIAL</u>

Jones argues that the district court failed to comply with the time limitations of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174. We disagree. The Act sets a 70-day limit for bringing a defendant to trial, but also provides that the speedy trial clock stops when any pretrial motion is filed until the resolution of that motion. 18 U.S.C. § 3161(c)(1) & (h)(1)(F). If the court takes a motion under advisement, the clock stops until the motion is ruled upon or for 30 days, whichever is shorter. 18 U.S.C. § 3161(h)(1)(J). The Act further provides that a reasonable period of delay is allowed when the defendant is joined for trial with a codefendant, which we have construed to mean that an exclusion for one defendant applies to all defendants. 18 U.S.C. § 3161(h)(7); <u>United States v. Carey</u>, 746 F.2d 228, 230-31 (4th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1029 (1985).

A review of the docket sheets in this case indicates that Jones's speedy trial clock began to run when the indictment against him was unsealed on September 2, 1994. 18 U.S.C. § 3161(c)(1). Jones filed a motion for discovery on September 16, 1994. In mid-October, at least two of his codefendants also filed motions for discovery. These pending motions were all decided on November 16, 1994. On December 22, 1994, Jones filed a motion to continue the trial. This motion was taken under advisement on December 29. Finally, Jones filed a motion to dismiss the charges on January 20, 1995, which was resolved on the first day of trial, January 23.

_____
**5** The attorneys and the district court were uncertain as to whether Barnwell's name had been called as a witness and treated the matter as if it had not been called. The district court, in excusing Helton, explained to the jury that Helton was excused because of his acquaintanceship with a witness which was unknown at the time of the voir dire. These remarks of the district court were entirely neutral and innocuous and any objection to them is without merit. Any sought-for inference that Helton was excused because he was black is entirely without support. The reason for Helton's excuse being entirely unrelated to race, there is no <u>Batson</u> question as the district court correctly recognized.

Excluding the time during which the above motions were pending, Jones's clock had advanced 50 days at the most, i.e., 14 days between September 2 and September 16 plus 36 days between November 16 and December 22. The parties disagree as to whether the pendency of a motion for discovery constitutes excludable time under the Act. However, this court has excluded the time during which such a motion is pending.[6] See United States v. Tinsley, 800 F.2d 448, 449-50 (4th Cir. 1986). Jones was thus brought to trial within the 70-day limit. Accordingly, his claim under the Speedy Trial Act fails.

IV. FALDEN'S TESTIMONY

Lawson Dodson alleges that the prosecution knowingly used perjured testimony from government witness Alonza Falden to obtain his conviction. Falden provided testimony on at least three occasions: at a multi-jurisdictional grand jury proceeding in December 1993, at the December 1994 trial of three of Dodson's codefendants, and at Dodson's trial on January 23, 1995.

Dodson first claims that the government made or inferred promises of a reduced sentence in exchange for Falden's testimony at the grand jury proceeding. According to the transcript from the grand jury, the Commonwealth's Attorney[7] conducting the inquiry stated to the grand jury that Falden "hopes to receive . . . some kind of reduction of his sentence" from testifying before the grand jury. Later in the appearance, the prosecutor stated that his "impression" was that Falden was testifying honestly and that "the Judge should give that consideration when it comes time for your sentence." Based on these comments, Dodson claims Falden lied at Dodson's trial when he stated that no

_____

[6] We note that several other circuits have also excluded the time during which a discovery motion is pending for speedy trial purposes. See, e.g., United States v. Castle, 906 F.2d 134, 137 (5th Cir. 1990); United States v. Winfrey, 900 F.2d 1225, 1227-28 (8th Cir. 1990); United States v. Jorge, 865 F.2d 6, 11-12 (1st Cir.), cert. denied, 490 U.S. 1027 (1989); United States v. Langford, 802 F.2d 1176, 1178 (9th Cir. 1986), cert. denied, 483 U.S. 1008 (1987); United States v. Darby, 744 F.2d 1508, 1518 (11th Cir. 1984), cert. denied, 471 U.S. 1100 (1985).
[7] George E. Buzzy was also apparently a Special Assistant U. S. Attorney.

one had helped him make parole in exchange for his testimony. We, however, do not believe the government prosecutor's statements regarding Falden's hopes and the prosecutor's impressions about what a court should do amount to the promises Dodson claims they are. In all events, the remarks went to the weight of Falden's testimony before the grand jury and the government's representation that Falden's mandatory parole date would have released him in time for this trial is unrefuted.

Dodson also points to inconsistencies in Falden's testimony at the three proceedings. At the grand jury investigation in December 1993, Falden stated that "Jake" (presumably the defendant, whose full name is Lawson Jacob Dodson) was a cousin of Carroll and Timothy Dodson and that Jake paid Carroll rent to live in one of the two houses at the farm. He also claimed that he had seen Dodson sell marijuana at another house belonging to the Dodsons. He had witnessed only marijuana sales at this third house. He did not otherwise implicate Dodson as being involved in the Dodson organization.

At the December 1994 trial, the government's attorney asked Falden to list for the jury the persons named Dodson who supplied Falden with cocaine for sale at the farm, the fortress, and Frazier Road. Falden named Raleigh Dodson, Timothy Dodson, David Lee Dodson, and Charles Dodson. At the second trial on January 23, 1995, the prosecutor asked Falden to give the jury examples of people who Falden knew or saw or people who told Falden they brought cocaine to the locations to start sales. Falden answered, "Timothy Motley, Charles Dodson, Jacob Dodson. That's all I see in the courtroom now." In addition, he testified that he had seen Timothy Dodson and Jacob Dodson both taking responsibility for a location at the same time, with people selling for them simultaneously. He further said that he sold approximately 15 ounces of cocaine for Lawson Dodson over the years. He also mentioned Charles Dodson as being present during the Dodsons' negotiations for a new supply of cocaine.

We think any inconsistencies in Falden's testimony fall short of demonstrating a deliberate attempt on the government's part to elicit perjured testimony, even if the inconsistencies speak to Falden's credibility. Two of the defendants' attorneys, including Dodson's, explored such inconsistencies on cross-examination. The credibility

10

of this witness was for the jury, and we will not disturb the jury's assessment.

## V.

### A. Childress's § 924(c) Conviction

Childress challenges his § 924(c) conviction for using or carrying a firearm during a drug trafficking crime on January 8, 1993, or for aiding and abetting the same in violation of 18 U.S. C. § 2, as charged in Count 5 of the indictment. Childress contends that the evidence is insufficient to support his conviction and that the district court's use of an erroneous jury instruction in view of Bailey v. United States, 516 U.S. 137 (1995), constitutes reversible error. [8] Applying the pre-Bailey standard, there can be little or no doubt that the evidence against Childress was sufficient to support the jury's verdict. However, Bailey requires active employment in order to convict a defendant of using a firearm in violation of § 924(c). Thus, the effect of the district court's erroneous instruction requires a closer look.

_____

[8] On the use or carry element of § 924(c), the district court, quite properly at the time it was given, instructed the jury as follows:

> Now, if a firearm plays any role in the drug felony, if it facilitates the crime in any way, it is being used in the sense that has been charged under this indictment. Moreover, if the firearm's role is only a passive one, such as being possessed for security or for contingencies, that would constitute use or possessing during a drug trafficking offense, and again, the phrase "use" or "carries a firearm" means having a firearm or firearms available to assist or aid in the commission of the alleged drug offense, and in determining whether the Defendant used or carried a firearm, you may consider all of the factors received into evidence, including the nature of the underlying drug trafficking crime, as alleged, the proximity of the Defendant to the firearm in question, and the usefulness of a firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

> The Government is not required to show that the Defendant actually displayed or fired the weapon. The Government is required, however, to prove beyond a reasonable doubt that the firearm was in the Defendant's possession, or under the Defendant's control, at the time of the drug trafficking offense.

11

In evaluating the district court's erroneous instruction as to an element of the offense charged, we apply the plain error standard set forth in United States v. Olano, 507 U.S. 725 (1993). See Johnson v. United States, 65 U.S.L.W. 4305, 4307-08 (U.S. May 12, 1997) (No. 96-203) (permitting application of plain error test); United States v. Martinez, ___ F.3d ___ (4th Cir. Feb. 18, 1998) (Nos. 95-5331, 95-5332) (applying Olano principles to erroneous § 924(c) instruction). As in Martinez, we are of opinion that under Olano: (1) there is error; (2) the error is plain; and (3) the error "affect[s] substantial rights." Olano, 507 U.S. at 732-35. We have the discretion to notice and correct this error if it "seriously affect[s] the fairness, integrity or public reputation or judicial proceedings." Olano , 507 U.S. at 732 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). In applying this prong of the Olano test, we consider whether the trial evidence on the element was "overwhelming" and "essentially uncontroverted." Johnson, 65 U.S.L.W. at 4308.

The record contains little evidence regarding Childress's use or carrying of a firearm. Childress was present at the fortress on January 8, 1993 and was conducting cocaine sales at that time. Jermaine Chase and another, unnamed individual were inside the fortress at this time, playing with two guns. However, there is no evidence in the record suggesting that Childress ever had contact with, or even observed, the firearms on January 8. Thus, we cannot say that the direct evidence on the use or carry element of § 924(c) was "overwhelming" or "essentially uncontroverted." Johnson, 65 U.S.L.W. at 4308.

Because the indictment also permits a § 924(c) conviction under the aiding and abetting principles set forth in 18 U.S.C. § 2, we must also evaluate the evidence in light of this theory of liability. The district court instructed the jury that "mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the Defendant was a participant and not merely a knowing spectator." Based on the record, we cannot say that, under proper instruction, the evidence that Childress aided or abetted another in using or carrying a firearm is overwhelming or essentially uncontroverted. Therefore, the district court's error under Bailey affected the fairness of the trial, and we

12

notice its error in order to avoid a "miscarriage of justice." <u>Olano</u>, 507 U.S. at 732, 736. Accordingly, we vacate Childress's conviction under § 924(c) and remand that aspect of this case for retrial if the government be so advised.

B. <u>Motley's § 924(c) Convictions</u>

Motley also appeals his § 924(c) convictions on sufficiency of the evidence grounds and in light of the erroneous jury instruction. Counts 32 and 34 of the indictment charged Motley with § 924(c) violations occurring on September 30 and October 7, 1993, respectively. The evidence shows that Motley was carrying a gun in his hand on September 30 when he received money from government witness Barnwell for a sale of crack cocaine. The record also indicates that Motley had a gun on his person and in plain view throughout an hour-long drive with Barnwell on October 7. During the drive, Motley sold Barnwell $200 worth of crack cocaine.

There can be no doubt that this evidence is sufficient to support the jury's verdict under the pre-<u>Bailey</u> law. But again, we must also evaluate the effect of the district court's failure to charge the <u>Bailey</u> standard of active employment required for conviction under § 924(c). <u>Bailey</u>, 516 U.S. at 144. In <u>Bailey</u>, the Court stated that "[t]he active employment understanding of `use' certainly includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm." <u>Bailey</u>, 516 U.S. at 148. We are of opinion that even under the higher standard set forth in <u>Bailey</u>, the evidence regarding Motley's conduct of displaying the firearm during drug transactions is overwhelming and essentially uncontroverted evidence of use. We are of opinion that the jury would not have found Motley anything but guilty of the § 924(c) charges had the proper instruction been given. Therefore, the district court's misinstruction constitutes harmless error, and we affirm Motley's§ 924(c) convictions.

VI. <u>CHILDRESS'S SENTENCE</u>

Childress objects to the district court's attributing 33.1 grams of crack cocaine to him for sentencing purposes.**9** He argues that the gov-

_____

**9** A witness testified at trial that he had seen Childress sell drugs over 100 times. Assuming a typical sales unit of .2 grams of crack cocaine,

13

ernment failed to prove he sold crack cocaine rather than powder cocaine, although he never raised this issue at his sentencing hearing.

In any event, we find that sufficient evidence supports, by a preponderance of evidence, the district court's conclusion that the substance at issue was crack cocaine. At trial, witness Falden stated that he and the Dodsons were involved in preparing and selling crack cocaine. Regarding the three substantive drug violations for which Childress was convicted, the evidence indicates that in each instance the relevant substance was crack cocaine rather than powder cocaine. Furthermore, the presentence report mentions crack cocaine only. At the sentencing hearing, counsel for Childress and the government, as well as the probation officer all referred to the drug under consideration as crack cocaine. In light of the above, and absent a contemporaneous objection to the district court's finding that the substance was crack cocaine, Childress's challenge to his sentence on account of the amount of drugs fails. See United States v. Olano, 507 U.S. 725, 733-34 (1993).

Because the conviction under § 924(c) of Little Tom Childress is vacated and sent back for another trial, if the government be so advised, Childress's sentence for his § 924(c) conviction also must be vacated. That brings up the question as to whether or not other parts of his sentence may be affected by the vacation of the § 924(c) conviction. We express no opinion on that question, but because there may be some chance that other parts of Childress's sentence may be affected by the vacation of his § 924(c) conviction, we vacate his entire sentence. Upon remand, after the § 924(c) question is disposed of, the district court will resentence Childress and at that time make any correction to his sentence it deems appropriate. We express no opinion on whether or not his sentence should be corrected.

_____

the district court first attributed 20 grams of crack cocaine to Childress (100 deals x .2 grams per deal = 20 grams). To this figure, the court added 11.1 grams of crack cocaine seized from Timothy Dodson on July 29, 1993. Childress had been seen driving Dodson to another person's house approximately one-half hour earlier that day while Dodson was carrying a red bank bag in which the drugs were found. The court thus attributed a total of 33.1 grams of crack cocaine to Childress.

14

VII. POST-ARREST STATEMENT

Miss Reid's claim that the district court should have suppressed her post-arrest statement to the police or granted a continuance is equally unavailing. The statement referred to comprises Miss Reid's comments to Special Agent Elizabeth Mantz during the transport of Miss Reid from custody in Danville to custody in Roanoke.

Miss Reid makes no claim that her statement to Miss Mantz was involuntary. Rather, she complains that the government disclosed the statement in an untimely manner to her prejudice. Miss Mantz's synopsis of Miss Reid's statement was dated September 15, 1994 and marked "filed" in the United States Attorney's Office in September 1994. On November 10, 1994, Miss Reid filed a motion for discovery requesting the right to inspect and copy any oral or written statement she had made as well as an opportunity to inspect and copy all books, papers, documents, and objects to be used by the government at trial. The district court granted this motion on November 23, 1994. Miss Reid's attorney reviewed all discovery material that same day, but the statement was not among the materials made available. Defense counsel first received notice of the statement's existence on December 20, 1994, when Miss Mantz's synopsis of it arrived attached to a proposed plea agreement. The district court denied Miss Reid's subsequent motions to suppress or for a continuance.

We first note that the district court's order stated only that it was denying Miss Reid's motions "for reasons expressed at a hearing on January 12, 1995." However, neither the appendix nor the record on appeal provides a transcript of this hearing. We are reluctant to find the district court's ruling erroneous when the record on appeal fails to provide the basis for upsetting the district court's decision. Cf. Powell v. Estelle, 959 F.2d 22, 26 (5th Cir.) (refusing to review issue when plaintiff failed to include transcript of district court hearing in record on appeal), cert. denied, 506 U.S. 1025 (1992).

Moreover, even viewing the evidence in the light most favorable to Miss Reid, we find no indication that the statement's delayed disclosure was prejudicial. The record reveals that the government provided the statement to her attorney approximately one month before trial began on January 23, 1995. At trial, defense counsel referred to

15

details from the report during cross-examination of Miss Mantz. Although we do not encourage untimely disclosure of discovery material, we are of opinion any error, not being prejudicial, is not reversible.

## VIII. MOTION FOR SEVERANCE

We also conclude that the district court did not abuse its discretion in denying Miss Dodson's motion for severance. Miss Dodson contends that the jury likely used evidence admitted only against codefendants but inadmissible or excluded as to her. However, she fails to identify the particular evidence to which she refers, except to say that the government introduced some evidence relating only to Miss Dodson's codefendants and thus inapplicable to her. Miss Dodson also asserts that the evidence against her was minimal as compared to her codefendants and that the jury failed to consider her individually in determining her guilt or innocence. We are of opinion that Miss Dodson has failed to demonstrate any compromise of her specific trial rights or threat to the jury's ability to make a reliable judgment caused by her joinder for trial. See Zafiro v. United States, 506 U.S. 534, 539 (1993). The district court thus acted within its discretion in refusing to sever her case for trial.

## IX. OTHER ISSUES

The balance of the defendants' claims do not merit extended discussion. The district court committed no abuse of discretion when it complied with the jury's request during deliberations to view Jones and Motley individually after replaying of a videotape previously received into evidence. No error occurred with respect to Jones when the district court allowed the government to identify the counts for which witness Danny Brabham offered testimony since that testimony did not relate to any of the defendants before this court.

Regarding Miss Dodson's challenge to the conclusion that she possessed cocaine with intent to distribute on December 17, 1993, as charged in Count 42 of the indictment, the record indicates that Miss Dodson barricaded herself in a tiny bathroom with three other people during the execution of a search warrant at the farm that night. The bathroom's commode was overflowing because several bags of

16

cocaine, which combined to form a lump the size of a baseball, had been partially flushed and were blocking it. Floating in approximately two inches of water on the bathroom floor was $846 in currency. Officers found an additional $820 in small denominations in Miss Dodson's coat. We find the evidence sufficient to uphold the verdict on this count. Finally, the defendants' general contention that the evidence does not support the verdict on any count of the indictment is not supported by the record.

X.

In sum, all of the convictions except that of Little Tom Childress on the § 924(c) charge are affirmed.

All of the sentences except those of Little Tom Childress are affirmed.

The conviction of Little Tom Childress on the § 924(c) charge (indictment count FIVE) is vacated and that aspect of the case is remanded for a new trial if the government be so advised.

The sentence of Little Tom Childress is vacated for resentencing on remand in accordance with part VI of this opinion.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED WITH INSTRUCTIONS[10]

_____

[10] We should conclude with a remark that in this complicated case involving ten defendants, eight of whom have appealed, an indictment of 71 counts, and a jury trial, each of the attorneys, both for the government and the defendants, not to mention the district court, cooperated to make an intelligible record. The same applies to the briefs on appeal, which are remarkably well organized without forfeiting any right or contention.