UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 99-4114

JOHN FREDERICK WATSON, a/k/a John
Francis Watson,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-98-343)

Submitted: September 8, 1999

Decided: September 24, 1999

Before NIEMEYER, WILLIAMS, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Douglas A. Steinberg, Alexandria, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, G. David Hackney, Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John Frederick Watson appeals his convictions and sentence for conspiracy to distribute cocaine base and for possession with intent to distribute cocaine base. We affirm.

From mid-1996 until his arrest on May 26, 1998, Watson led a crack cocaine distribution ring in an area of Alexandria, Virginia, nicknamed "the Burgh." He sold wholesale quantities to various persons, who in turn sold directly to users.

Watson's arrest came through the help of a confidential informant, Rajee Wyatt. An Alexandria city detective paged Watson, indicating that Wyatt wished to purchase $750 of crack cocaine and leaving a telephone number for Watson to call to Wyatt to arrange the transaction. Watson called back about ten minutes later and arranged to meet at a parking lot. When Watson arrived at the designated parking lot, he was arrested. Twenty-nine grams of crack cocaine were found in his car. After receiving Miranda[1] warnings, Watson admitted that he received the page, purchased the crack cocaine, and came to the parking lot in order to sell it to Wyatt.

Watson was charged in a four-count indictment with conspiracy to distribute cocaine base, possession with intent to distribute cocaine base, and two counts of carrying a firearm during and in relation to a drug trafficking offense. One of the firearms counts was dismissed on the Government's motion before trial.

At trial, in addition to the physical evidence and statements obtained at the time of Watson's arrest, the Government presented the testimony of three cooperating witnesses: James Bates, Alvin Fergu-

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

2

son, and Damani Kelly. Bates testified that he bought over two kilograms of crack cocaine from Watson during 1996 and early 1997 and that during one transaction, Watson showed him a gun. Ferguson testified that Watson sold him over 150 grams of crack cocaine, and Kelly recounted two 4.5-gram purchases during February 1998.

During trial, the Government learned that Watson had threatened to harm Bates' family if he testified. The Government asked the district court to permit Bates to be recalled to testify about the threat. The court allowed Bates to be recalled, and Bates testified that while he and Watson were in separate cells of a holding facility on the morning of the trial, he overheard Watson telling his cellmate that "people who snitch on people don't realize that they got family out there, and that if he goes down, that people are going to start dropping like flies." Bates felt that this statement was intended for his ears.

During its deliberations, the jury asked a question about an overt act alleged in the indictment--Watson's possession of 156 grams of crack cocaine on October 11, 1996. No evidence concerning this overt act was presented at trial. The district court responded, without objection, that no evidence had been admitted concerning this allegation and that, in any event, proof of an overt act is not essential for conviction of a drug trafficking conspiracy. Moreover, in both voir dire and in its final instructions, the court instructed the jury that the indictment was not evidence.

Watson was convicted of conspiracy and of possession with intent to distribute and acquitted of the remaining firearms count. Watson filed an untimely motion for a new trial, which the district court denied. He was later sentenced to 292 months in prison, to be followed by ten years of supervised release. Watson appeals.

Watson first argues that the district court erred by permitting the unredacted indictment to be submitted to the jury, because the indictment's allegation that he possessed crack cocaine on October 11, 1996 provided the jury with extraneous, prejudicial information.[2]

_____

[2] Watson's argument that evidence of this alleged overt act was excluded by the district court is inaccurate. Instead, the district court excluded as unduly prejudicial testimony that Watson had been incarcerated in October 1996. Although his incarceration may have stemmed from the alleged overt act, it does not at all follow that the district court would have excluded evidence of that act if it had been presented.

Because Watson did not object to either the submission of the indictment to the jury or to the district court's response to the jury's inquiry, our review is for plain error. See United States v. Olano, 507 U.S. 725, 731-32 (1993).**3**

The first and most basic characteristic of a plain error is its "plainness"--unless the error is "obvious, or, at a minimum, clear under current law," an appellate court may not take note of it. United States v. Castner, 50 F.3d 1267, 1277 (4th Cir. 1995). We find no such obvious error. The district court properly instructed the jury that the indictment was not evidence and that proof of an overt act was not necessary for conviction of a drug trafficking conspiracy.

Watson relies on United States v. Greene, 834 F.2d 86 (4th Cir. 1987), but we find Greene distinguishable from this case. In Greene, the jury asked for the exhibits to be sent into the jury room, and twenty-one exhibits that had not been introduced into evidence were inadvertently included. This mistake was not discovered until after the jury returned a guilty verdict. Thus, in Greene , the jury considered extraneous, prejudicial information that, under its instructions, it had every reason to believe was evidence. The district court granted a new trial, and we affirmed. Here, in contrast, the jury was instructed not only that the indictment was not evidence, but also that the Government had not proved the alleged overt act. Thus, we find no error, plain or otherwise.

Next, Watson assails the admission of Bates' testimony concerning Watson's jailhouse threat. We review the district court's decisions regarding admission of evidence for abuse of discretion. See United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993).

Evidence of an accused's intimidation of witnesses is relevant because it betrays a consciousness of guilt and an awareness that the witness might give inculpatory testimony. See United States v. Van

_____

**3** This issue was first raised in Watson's motion for a new trial. To the extent Watson asserts that the denial of that motion was error, we find no error because the motion was untimely. See Fed. R. Crim. P. 33 (requiring a motion for a new trial, except one based on newly discovered evidence, to be filed within seven days of the verdict).

4

Metre, 150 F.3d 339, 352 (4th Cir. 1998); United States v. Hayden, 85 F.3d 153, 158-59 (4th Cir. 1996). On the other hand, unfair prejudice could result to the defendant if the alleged threats are of dubious reliability or have little or no connection to the case at bar. Consequently, the district court should assure that the evidence is reliable and tends to show a consciousness of guilt of the charged crime or crimes. See Van Metre, 150 F.3d at 352. Moreover, if the evidence is admitted, the district court can and should mitigate any unfair prejudice by instructing the jury of the limited purpose of the evidence. The district court followed this prescription to the letter, and we conclude the court did not abuse its discretion by admitting evidence of Watson's threat.

Finally, Watson attacks two factual findings of the district court at sentencing. He argues that the court erred in enhancing his offense level for possession of a gun under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (1998) and in finding that he was responsible for the distribution of over 1.5 kilograms of crack cocaine. We may disturb such factual findings only if they are clearly erroneous. See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999).

For each finding--gun possession and drug weight--the testimony supporting it came from cooperating witnesses. Watson attacks their credibility, just as he did in the district court. Because credibility determinations often rest on observation of a witness' demeanor, the trier of fact is far better positioned than we to make them. Consequently, we are reluctant to hold a factual finding resting on a credibility determination clearly erroneous. See United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994). Our reluctance has not been overcome here.**4** The judgment of the district court is affirmed.

We dispense with oral argument because the facts and legal conten-
_____
**4** It is true that the jury found Watson not guilty of carrying a firearm during and in relation to a drug trafficking offense. However, the jury's finding is not dispositive of the § 2D1.1(b)(1) issue at sentencing, because the standard of proof is lower and the elements are somewhat different. See United States v. Watts, 519 U.S. 148 (1997) (per curiam); United States v. Barber, 119 F.3d 276, 283-84 (4th Cir.) (en banc), cert. denied, 118 S. Ct. 457 (1997).

5

tions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6